# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2018, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Ryan T. McMullen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 27, 2018

Court of Appeals Case No.
27A02-1710-PC-2555

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No.
27C01-1112-PC-9

**Mathias, Judge.**

[1] Ryan T. McMullen ("McMullen") appeals the post-conviction court's denial of his petition for post-conviction relief. McMullen raises three issues for our review, which we consolidate and restate as:

> I. Whether McMullen received ineffective assistance of trial counsel; and
>
> II. Whether McMullen received ineffective assistance of appellate counsel.

[2] We affirm.

## Facts and Procedural History

[3] In our memorandum decision in McMullen's direct appeal, a panel of this court set forth the facts and initial procedural history underlying McMullen's convictions as follows:

> Greentree West Apartments ("Greentree") is a public housing complex in Marion with approximately fifty units. In January 2009, Julie Taylor, Greentree's manager, distributed fliers to the residents advising them of a future pesticide treatment in the units. The lease agreements informed the residents that pesticide treatments would be conducted two times per year. On January 8, 2009, Steve Gause, a maintenance employee at Greentree, was treating Apartment 410 with pesticides and noticed a loaded assault weapon in one of the kitchen cabinets. Gause then contacted a detective with the Joint Effort Against Narcotics Drug Task Force ("the JEAN Team") and reported his observation of the firearm.
>
> Marion Police Detective John Kauffman received an e-mail, warning police officers of a potential safety issue if they were called to Apartment 410. Detective Kauffman knew that Janita

Glasser lived at the apartment and that she was the mother of McMullen's children. Detective Kauffman was aware that McMullen had been linked to previous incidents that involved weapons. Detective Kauffman obtained a mug shot of McMullen and showed it to Gause, who confirmed that McMullen had been staying at the apartment. Detective Kauffman discovered that there was an active warrant for McMullen's arrest in an unrelated matter.

Thereafter, JEAN team members went to Greentree to conduct surveillance and serve the arrest warrant on McMullen. McMullen's vehicle was parked near Apartment 410, and Detective Kauffman saw several individuals go into that apartment for short periods of time. Based on his experience as a police officer, Detective Kauffman believed that such conduct was indicative of drug activity. Various members of the JEAN Team were also familiar with McMullen's previous drug and weapons charges. At some point, Detective Kauffman observed a known drug user leave the apartment. Detective Kenneth Allen stopped her vehicle near Greentree and explained that the police were looking for "Pat." Tr. p. 79. The individual said that she had just left Greentree and had spoken with "Ryan" in Apartment 410. Tr. p. 79. Although the woman tried to purchase crack cocaine from "Ryan," who was subsequently identified as McMullen, he refused to sell her any drugs because she had "too much drama." Tr. p. 295.

Several police officers then approached the apartment and one of the detectives looked through the front window blinds that were partially open. Detective Allen looked through the window and saw McMullen sitting on the couch. Thereafter, a detective knocked on the door, held up his police badge, and said, "Ryan, this is the police. We have a warrant for your arrest. Come to the door. Open the door now." Tr. p. 64. McMullen got up from the couch, released the blinds, stepped away from the window, and moved toward the kitchen where Gause had seen the weapon.

Tr. at 64–65. The police officers then entered the apartment and took McMullen into custody. Detective Kauffman smelled marijuana and saw an infant on the couch. After releasing the infant to her mother, the officers obtained a search warrant for the apartment.

During the course of the search, the officers recovered nearly eighteen grams of cocaine, one kilogram of marijuana, and a nine[-]millimeter handgun. On May 4, 2009, the State charged McMullen as follows:

> Count I, Possession of Cocaine, a class A felony
>
> Count II, Dealing in Cocaine, a class B felony
>
> Count III, Neglect of a Dependent, a class C felony
>
> Count IV, Possession of Cocaine, a class C felony
>
> Count V, Possession of marijuana, a class D felony
>
> Count VI, Habitual Offender

McMullen's motion to suppress that he filed on July 28, 2010, alleged that the police officers' entry into the apartment

> 4. Was unreasonable and in violation of the rights and privileges of citizens secured under the 4th and 14th Amendments to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, because the drug task force officers lacked the valid authority of a search warrant to search . . . Glasser's apartment for defendant, and defendant had a reasonable expectation of privacy in

the premises as a guest and had standing under the Indiana Constitution as a guest of . . . Glasser to assert this claim. The arrest warrant did not provide authority to enter . . . Glasser's apartment to search for a non-resident.

*** 

6. Drug task force officers violated the rights and privileges secured by Article 1, Section 11 of the Indiana Constitution when an officer left the porch or walkway to look in the window of [Apartment 410] because defendant had a reasonable expectation of privacy from spying from an area not a public way and therefore, a part of the secure area of the apartment.

7. As a result of these acts that violate defendant's right to privacy secured by [the] 4th and 14th Amendments to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, the fruits of the illegal entry must be suppressed as having been gained by the benefit of the illegal entry, notwithstanding the purported authority of the subsequently acquired search warrant . . . since the authority of the search warrant was based on probable cause gained from the illegal entry.

8. No officer knowledgeable in the scope of the authority granted by an arrest warrant would have a good faith belief in the reasonableness of the entry to [the apartment] to search for defendant, neither would such an officer reasonably rely on the warrant subsequently issued, which should not have issued, because the probable cause for the warrant was based on an illegal entry of the premises as is apparent in the text of the transcript of the probable cause hearing.

Appellant's App. pp. 38–40.

Following a hearing, the trial court denied McMullen's motion to suppress. The trial court determined, *inter alia*, that Gause was employed at Greentree and was acting as a private citizen when he entered the apartment. Gause's entry into the apartment was not conducted at the direction of the police or with the intent to assist law enforcement agents. Thus, Gause's discovery of the weapon was not the result of an unreasonable search in violation of the Fourth Amendment.

The trial court also concluded that the police officers' entry into the apartment was justified because the arrest warrant for McMullen granted them the implied authority to enter the residence and apprehend him. As a result, it was determined that the marijuana and cocaine seized pursuant to the subsequently issued search warrant were properly admitted into evidence.

At the conclusion of McMullen's jury trial on August 12, 2010, McMullen was convicted of possession of cocaine, a class A felony, possession of cocaine, a class C felony, and possession of marijuana, a class D felony. The trial court vacated the class C felony conviction in light of double jeopardy concerns.

At the sentencing hearing that was conducted on September 10, 2010, the trial court identified McMullen's lengthy criminal history and his failure to report for incarceration after being released from jail as aggravating factors. The trial court recognized the undue hardship that McMullen's incarceration would have on his dependents as the sole mitigating circumstance. After determining that the aggravating factors outweighed the mitigating circumstance, the trial court sentenced McMullen to fifty years on the cocaine possession charge and to a concurrent term of three years for possession of marijuana.

*McMullen v. State*, 27A02-1009-CR-1165, 2011 WL 2507057, at *1–3 (Ind. Ct. App. June 23, 2011) (footnotes omitted), *trans. denied*.

[4] McMullen argued on direct appeal that the trial court improperly admitted the cocaine and marijuana into evidence during trial because Gause was acting as a police informant, and he illegally entered the apartment. *Id.* at *3. McMullen also claimed that his fifty-year sentence was inappropriate under Indiana Appellate Rule 7(B). *Id.* at *5. A panel of this court rejected McMullen's arguments and affirmed his convictions and sentence. *Id.* at *6.

[5] On December 7, 2011, McMullen petitioned for post-conviction relief. He subsequently amended his petition on February 9, 2017, in which he claimed: (1) ineffective assistance of trial counsel; and (2) ineffective assistance of appellate counsel. An evidentiary hearing was held on July 25. On October 31, the post-conviction court issued an order in which it denied McMullen's petition for post-conviction relief.

[6] McMullen now appeals.

## Post-Conviction Standard of Review

[7] The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On appeal, we do not reweigh evidence nor judge the credibility of witness; therefore, to prevail, McMullen must show

that the evidence in its entirety leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but the "findings and judgment will be reversed only upon a showing of clear error–that which leaves us with a definite and firm conviction that a mistake has been made." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008).

## Ineffective Assistance of Trial Counsel

[8] McMullen contends that his trial counsel, Joe Keith Lewis ("Lewis"), was ineffective for several reasons. A claim of ineffective assistance of trial counsel requires a showing that: (1) Lewis's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced McMullen such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). When it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011). Moreover, "[i]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997)

(citations omitted). We address each of McMullens's claims as to why Lewis was ineffective in turn.

## I.  Failure to Call Witnesses

[9]  McMullen first claims that Lewis was ineffective at trial for failing to call three witnesses during trial: Stephen Gause, James Johnson, and Gerald Griffin. Our supreme court has explained that "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998) (citation omitted). Trial counsel's choice of which witnesses to call "is the epitome of a strategic decision." *Wisehart v. State*, 693 N.E.2d 23, 48 n.26 (Ind. 1998). Thus, we will not find Lewis ineffective for failure to call a particular witness absent a clear showing of prejudice. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 (Ind. 2000). It is McMullen's burden on appeal to offer evidence as to who the witnesses were and what their testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998).

### A.  Stephen Gause

[10]  McMullen argues that Lewis was ineffective for failing to call Stephen Gause ("Gause") during trial because: (1) Lewis referenced Gause's expected testimony during his opening statement; and (2) Gause would have testified that when he opened the kitchen cabinet in the apartment, he only saw a firearm.  McMullen specifically contends that this testimony "would have

supported the defense theory that someone other than McMullen placed the cocaine in the cabinet." Appellant's Br. at 27.

[11] Lewis remarked during his opening statement that, "Mr. Steve Gause who is a Greentree employee, uh, is in the apartment spraying for bugs . . . [a]nd he opens the cabinet and he notices the firearm described in the cabinet and that's all he sees. And that's at one p.m. And there's nothing else in that cabinet except the firearm." Trial Tr. Vol. 1, p. 190. We initially note that Lewis never promised testimony from Gause as McMullen alleges. *See* Appellant's Br. at 28; *Myers v. State*, 33 N.E.3d 1077, 1093 (Ind. Ct. App. 2015) (counsel was not ineffective for telling the jury that the defense would present certain evidence during trial, and then failing to do so), *trans. denied*. And Lewis explained during the evidentiary hearing that he did not consider calling Gause as a defense witness because he "would've wanted him on cross examination and not on direct." PCR Tr. p. 9. Lewis was concerned that if the State was able to cross-examine Gause, it would be able to elicit testimony that would be harmful to McMullen. *Id.* at 10. Specifically, Lewis did not want the State to be able to question Gause about "why he was interested in this particular apartment." *Id.*

[12] Moreover, the mere fact that Gause would have testified that he saw only the firearm in the cabinet does not demonstrate that McMullen did not place the marijuana and cocaine in the cabinet later in the day. Gause was in the apartment around 1:00 p.m., and officers did not search the apartment and find

the marijuana and cocaine until hours later.[1] The search took place after officers had conducted surveillance and watched a known "crack cocaine abuser" go in and out of the apartment. Trial Tr. Vol. 1, p. 62–63. And McMullen did not even challenge his marijuana conviction because his DNA and fingerprints were found on the packaging inside the cabinet where the firearm was also located.

[13] For these reasons, we cannot say that Lewis's decision not to call Gause was unreasonable, and we will not second guess this decision. *Brown*, 691 N.E.2d at 447. And even if Lewis was deficient for failing to call Gause during trial, for the reasons listed above, we cannot say that doing so would have changed the outcome of McMullen's trial. Accordingly, Lewis was not ineffective for failing to call Gause as a witness.

*B. James Johnson*

[14] McMullen next argues that Lewis was ineffective for failing to call James Johnson ("Johnson") during trial. Specifically, McMullen contends that Johnson would have testified that he was at the apartment approximately two hours after Gause, and Johnson saw the firearm and a bag of marijuana in the cabinet—no cocaine. Johnson also would have testified that another individual in the apartment repeatedly opened the door to the cabinet. At the evidentiary

---

[1] McMullen was arrested around 6:35 p.m., and officers searched the apartment at approximately 7:15 p.m. Trial Tr. Vol. 2, p. 378.

hearing, Lewis was asked if he spoke with anyone at the apartment the day of the police search, and he responded, "No I did not conduct interviews[,] and I should've done that." PCR Tr. p. 11.

[15] We do not need to determine whether Lewis performed deficiently by failing to call Johnson as a witness because McMullen has failed to establish that he was prejudiced by the decision for three reasons. First, Johnson's alleged testimony would not have shown that someone other than McMullen put the cocaine in the cabinet. Johnson did not state that he saw anyone with cocaine or that he saw anyone put anything into the cabinet. His testimony simply would have been cumulative of testimony Lewis elicited during trial that there were at least five other people who visited the apartment on the day of McMullen's arrest. Trial Tr. Vol. 2, p. 424. Second, Johnson is McMullen's cousin, and it is likely that the State would have been able to attack his favorable testimony as biased. And third, Johnson's testimony would have placed him inside the apartment around 3:00 or 3:30 p.m., and Jasmine Davis testified during trial that the group only stayed for around twenty minutes. *Id.* at 424–25. The police did not take McMullen into custody until a little after 6:30 p.m. that evening, and thus, even assuming Johnson's testimony is true, there was plenty of time during which McMullen could have placed the cocaine in the cabinet next to the marijuana that had his DNA and fingerprints on it. For these reasons, we find that there is no reasonable probability that Johnson's testimony would have changed the outcome of McMullen's trial. Accordingly, Lewis was not ineffective for failing to call Johnson as a witness.

### C. Gerald Griffin

[16] McMullen next contends that Lewis was ineffective during trial for failing to call Gerald Griffin ("Griffin") as a witness. Specifically, Griffin signed an affidavit which indicates that he would have testified that:

> On January 8, 2009 [Garrett] asked me to give her a ride to the Greentree Apartment complex. She said she wanted to confront [] McMullen about a rumor that had gotten back to her husband, [C.G.]. She did not say anything about wanting to buy drugs from [McMullen]. [Garrett] went inside the apartment and came out a few minutes later. When she came out she did not say anything about trying to buy drugs from [McMullen]. She said [McMullen] told her to leave because he ([McMullen]) did not want to be involved in her marriage.

PCR Ex. Vol., McMullen's Ex. 15. At trial, Garrett testified that she went to see McMullen on January 8, 2009, because she was trying to get cocaine. Trial Tr. Vol. 2, pp. 294–95. McMullen argues that Griffin's testimony could have been used "to challenge Garrett's credibility regarding her reason for visiting the apartment." Appellant's Br. at 33. Lewis was asked at the evidentiary hearing if he spoke with Griffin, and Lewis responded, "No I should've interviewed him[,] and I did not do that." PCR Tr. p. 11.

[17] We do not need to determine whether Lewis performed deficiently by failing to call Griffin as a witness because McMullen has failed to establish that he was prejudiced by the decision. Again, Garrett testified that she went to see McMullen to purchase cocaine. Griffin's testimony that he did not hear Garrett say anything about drugs does nothing to refute her statement at trial.

Moreover, even if Griffin's testimony is true—that Garrett went to McMullen's that day to squash a rumor—this does not undermine her testimony that she was also looking to buy cocaine from McMullen. Simply put, we find that there is no reasonable probability that Griffin's testimony would have changed the outcome of McMullen's trial. Accordingly, Lewis was not ineffective for failing to call Griffin as a witness.

## II. Failure to Object to Evidence

[18] McMullen next argues that Lewis was ineffective at trial for failing to object to several pieces of evidence during trial. Our supreme court has explained that "in order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007). And if the objection would have been sustained, McMullen still must show that but for Lewis's failure to object, the result of his trial would have been different. *Id.* at 152.

### A. Testimony about an Arrest Warrant

[19] McMullen first asserts that Lewis was ineffective at trial for failing to renew an objection made during a pretrial hearing regarding an outstanding warrant for McMullen's arrest in an unrelated case.

[20] Prior to trial, Lewis filed a motion to suppress the evidence seized from the apartment, and the State filed a notice of intent to use Indiana Evidence Rule 404(b) evidence. Rule 404(b) provides in relevant part, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular

occasion the person acted in accordance with the character or trait." Here, the State sought to introduce evidence that McMullen had an outstanding arrest warrant on January 8, 2009. The trial court held a hearing on McMullen's motion to suppress and the State's intent to introduce evidence of the warrant. During the hearing, Lewis objected to the evidence related to the outstanding warrant. Appellant's Trial App. p. 154. However, in a written order, the trial court overruled Lewis's objection.[2]

[21] During trial, an officer was asked if he was aware McMullen had a warrant for his arrest, Lewis then interjected:

> Your Honor, at this time, I'd like to state an objection for the record as to *any evidence as to this investigation that flows as a result of, uh, the subject matter that we discussed in the Motion to Suppress.* Specifically all the evidence that would be developed as a result of any search or *any investigation at Greentree Apartments,* number 410, by law enforcement officers as a result of the conduct of Mr. Gause was the security man slash maintenance man at the apartment complex. And I request that *the testimony and arguments, uh, at our pre-trial hearing be incorporated* by referencing this motion, uh, in order to avoid repeating myself I would like to have this motion shown as a continuing objection.

Trial Tr. Vol. 1, p. 195 (emphases added). The trial court then recognized Lewis's statement as a continuing objection, and it overruled it. *Id.* at 195–96.

---

[2] To the extent McMullen argues that the trial court erred when it allowed the State to introduce evidence of McMullen's arrest warrant, *see* Appellant's Br. at 35–36, this issue is waived because it was available at the time he filed his direct appeal. *Timberlake v. State*, 753 N.E.2d 591, 597–98 (Ind. 2001).

Based on Lewis's statement above, he *did* make a continuing objection to evidence of McMullen's arrest warrant since it was covered at the hearing on the motion to suppress.[3] Accordingly, Lewis's performance was not deficient, and he was therefore not ineffective when he issued a continuing objection at trial relating to McMullen's arrest warrant.

[22]     McMullen also argues that Lewis erred in failing to ask for a limiting instruction regarding the arrest warrant.[4] Although requesting a limiting instruction would have been the preferred practice, we cannot say that its absence rises to the level of prejudice necessary to constitute ineffective assistance of counsel. *See McCullough v. State*, 973 N.E.2d 62, 78–79 (Ind. Ct. App. 2012), *trans. denied*. The jury's knowledge that McMullen had an outstanding arrest warrant has nothing to do with the crimes he was convicted of. It simply provided the jury with additional context as to why McMullen was arrested on January 8, 2009. McMullen has failed to persuade us that there is a reasonable probability that but for the absence of a jury instruction limiting the use of evidence regarding the arrest warrant, the result of his trial would have been different. Accordingly, Lewis was not ineffective for failing to request a limiting instruction regarding the arrest warrant at trial.

---

[3] We acknowledge that during the evidentiary hearing, Lewis noted that he did not renew the objection at trial because he thought "it would be regarded as harmless error and it would just be an empty objection[.]" PCR Tr. p. 12. However, for the reasons stated above, we conclude that Lewis's objection at trial sufficiently covered the arrest warrant evidence.

[4] The post-conviction court did not explicitly address this issue in its conclusions of law.

*B. Testimony about Prior Drug Sales*

[23] McMullen next contends that Lewis was ineffective at trial for failing to object to Garrett's testimony regarding alleged prior drug sales under Indiana Evidence Rule 404(b). McMullen alleges that the State was able to present "testimony from [Garrett], implying that she had purchased illegal drugs from McMullen in the past." Appellant's Br. at 38. We disagree.

[24] Garrett was not asked at trial if she purchased cocaine on a prior occasion, and she did not testify that she ever purchased cocaine from McMullen on the prior occasion. Garrett's testimony is as follows:

> [State]: Had you been at [the apartment] on one or more occasions?
>
> [Garrett]: I went one other time.
>
> [State]: One other time. Uh, did you always meet with the defendant, Ryan McMullen?
>
> [Garrett]: Yes

Trial Tr. Vol. 2, p. 296. Garrett testified previously that she was addicted to cocaine in 2009 and that she went to McMullen's on January 8, 2009, to purchase cocaine from McMullen. However, her testimony that she met McMullen one other time at the same apartment is not objectionable.

[25] Evidence Rule 404(b) "is designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so called 'forbidden inference.'" *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind. 1997). But we have previously explained that "evidence which creates a mere inference of

prior bad conduct does not fall within the purview of" Rule 404(b). *Dixson v. State*, 865 N.E.2d 704, 712 (Ind. Ct. App. 2007), *trans. denied*. Here, the only act that Garrett testified to is meeting McMullen at the apartment on a prior occasion. There is no indication that Garrett bought cocaine from McMullen on that prior occasion, or that she went there for any other illegal purpose. *See Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008), *trans. denied*. Therefore, Garrett's challenged testimony does not run afoul of Rule 404(b), and Lewis was not ineffective for failing to object to admissible evidence. *See Overstreet*, 877 N.E.2d at 155.

*C. McMullen's Jail Phone Calls and Letter*

[26] McMullen next contends that Lewis was ineffective at trial for failing to object under Rule 404(b) to: (1) a recorded jail phone call in which McMullen references a pending charge for failure to appear; (2) a recorded jail phone call in which McMullen references a warrant for his arrest; and (3) a letter written by McMullen from jail four years prior to the current offense in which he discusses his plan to stop selling cocaine and to focus on selling only marijuana and ecstasy moving forward.

[27] Regarding the jail phone calls, McMullen specifically argues that the portions of the calls referencing a pending charge and an outstanding warrant "were irrelevant and inadmissible under Rule 404(b)." Appellant's Br. at 39. In its order, the post-conviction court noted that Lewis's failure to object under Rule 404(b) was not ineffective because "the jury already kn[e]w that McMullen had

a warrant, because that was the reason for his arrest at the Greentree address," and that the reference to a pending charge was admissible because it "did not specifically identify any charges or convictions." Appellant's PCR App. p. 213.

[28] Both challenged portions of McMullen's jail house calls took place when he called Glasser on the night of his arrest. The challenged excerpts from the phone calls[5] are as follows:

> [McMullen]: They ain't brought me no charges yet though. All I got is a failure to appear but they got (unclear) consent cause they weren't suppose[d] to kick that door in. You know what I'm saying?

Trial Ex. Vol., State's Ex. 14, p. 2.

> [McMullen]: Right now they got me charged with the warrant. You know what I'm sayin'? Where I gotta do the eight and a half months or whatever.

*Id.* at State's Ex. 15, p. 4.

[29] The State argues that McMullen's statements "were the statements of a party opponent," and thus, "[t]here was a legal basis for their admission." Appellee's Br. at 22. The State is incorrect. Indiana Evidence Rule 801(d)(2) explains that a "statement [] offered against an opposing party" that "was made by the

---

[5] We note that at trial Lewis objected to the jury receiving a transcript of the phone calls. *See* Trial Tr. Vol. 2, pp. 386, 390. Although the trial court overruled the objection, it did not allow the jury to take the transcripts back to the jury room, and it issued the jury a limiting instruction that the transcript was solely provided to assist in listening to the tape. *Id.* at 387, 390.

party," is not hearsay. However, McMullen makes no claim that his statements in the jail house calls were hearsay. Rather, McMullen argues that Lewis was ineffective for failing to object because he asserts that the calls constituted inadmissible evidence under Rule 404(b). A statement made by a party may still be inadmissible under Rule 404(b) or Indiana Evidence Rule 402 ("Irrelevant evidence is not admissible.").

[30] However, we cannot say that Lewis's failure to object to the phone calls amounts to ineffective assistance of counsel. First, the jury already knew that there was a warrant for McMullen's arrest. *See* Trial Tr. Vol. 1, pp. 185, 186, 195; Vol. 2, pp. 270, 376. Therefore, even if Lewis had objected to the jury hearing about McMullen's warrant, it was cumulative and likely would have been overruled. *See Overstreet*, 877 N.E.2d at 155.

[31] Moreover, the jury subsequently heard testimony that McMullen's outstanding warrant was for a failure to appear. Trial Tr. Vol. 2, p. 399. This fact did nothing more than provide context for what the jury already knew, and it does nothing to undermine McMullen's conviction on completely unrelated evidence and charges. For these reasons, McMullen has failed to persuade us that there is a reasonable probability that if Lewis had objected under Rule 404(b) or Rule 402 to his statements in a jail house phone call, the result of his trial would have been different.

[32] McMullen also asserts that Lewis was ineffective for failing to object to the admission of an undated letter written by McMullen and found in Glasser's

apartment. Specifically, McMullen contends that the information contained in the letter "was irrelevant and inadmissible under Evidence Rule 404(b)." Appellant's Br. at 40. The State responds that the letter was relevant because it contained references to future acts and that any information relating to McMullen's past drug use was admitted elsewhere during trial and was thus merely cumulative.

[33] Glasser testified that the letter in question was written four years earlier,[6] Trial Tr. Vol. 1, p. 228, and in it McMullen writes, "I am gone [sic] get a job and sell weed and x. No more cocaine." Trial Ex. Vol., State's Ex. 13. Although the letter was allegedly written four years earlier, McMullen references *future* drug-related activity which is relevant to the offenses for which he was charged in the case before us. Further, the challenged statement in the letter actually supports McMullen's theory that the cocaine was not his, because he stated that he was no longer going to sell cocaine.

[34] McMullen's statement in the letter was also cumulative of other evidence presented to the jury.[7] The jury heard evidence that McMullen sold marijuana in the past and that officers smelled the odor of marijuana upon entering Glasser's apartment on the day of McMullen's arrest. *See* Tr. Vol. 1, pp. 186,

---

[6] It appears that McMullen wrote the letter to Glasser from jail.

[7] In its brief, the State alleges that "the fact that [McMullen] alluded to this sale of drugs in one communication and the warrant in another could not have undermined confidence in the outcome of his proceeding." Appellee's Br. at 22 (citing Trial Tr. Vol. 1, pp. 61–66, 79–80). However, six of the State's nine citations in support of its claim are from the trial court's hearing on the motion to suppress and the intent to use Rule 404(b) evidence at trial, and thus, this evidence was never presented to the jury.

189, 198; Vol. 2, pp. 270, 376–77. And Garrett testified that she was at Glasser's apartment on January 8, 2009, to purchase cocaine from McMullen. *See* Tr. Vol. 2, pp. 295, 297. For these reasons, McMullen has failed to persuade us that there is a reasonable probability that if Lewis had objected to the admission of the letter, the result of his trial would have been different. Accordingly, Lewis was not ineffective for failing to object to the jail house phone calls or the letter at trial.

*D. Testimony from Mark Stefanatos*

[35] McMullen next argues that Lewis was ineffective at trial for failing to object to testimony from Marion Police Department Sergeant Mark Stefanatos ("Sergeant Stefanatos") that: "(1) drug dealers typically possess digital scales; (2) the amount of cocaine found in this case was 'indicative' of dealing; (3) crack users generally do not possess crack because they consume it immediately after purchase; and (4) the amount of marijuana found in this case was 'typical' of a dealer." Appellant's Br. at 41; Trial Tr. Vol. 2, pp. 263–64. The State responds that "[t]he testimony in fact did not comment upon [McMullen] specifically, and so it was not objectionable." Appellee's Br. at 23.

[36] Both McMullen and the State rely on our court's decision in *Scisney v. State*, 690 N.E.2d 342 (Ind. Ct. App. 1997), *aff'd in relevant part*, 701 N.E.2d 847 (Ind. 1998), to support their respective positions. In that case, a detective testified that the specific facts of the case suggested that the defendant was a dealer rather than a user. *Id.* at 345. On appeal, a panel of this court held:

[A] police officer or law enforcement official who is offered and qualified as an expert in the area of drugs, drug trade, drug trafficking, etc., may offer testimony as to whether particular facts tend to be more or less consistent with dealing in drugs. However, the expert may not make conclusions as to whether the defendant is a dealer or whether the defendant had the intent to deal or deliver. Similarly, the expert may not be presented with a hypothetical set of facts which reflect the facts of the case and be asked to conclude whether a hypothetical individual is more likely a dealer or user. In essence, the expert may comment on the facts of the case, but must refrain from making any conclusions as to the defendant's intent, guilt, or innocence.

*Id.* at 346. The *Scisney* court then held that because the detective "offered conclusions as to [the defendant's] intent to deliver . . . the testimony should have been excluded." *Id.* However, we upheld the defendant's conviction because we found that the admission of the detective's inadmissible evidence constituted harmless error based on substantial independent evidence of guilt. *Id.* at 347.

[37]   Sergeant Stefanatos's challenged testimony here is as follows:

> [State]:      Ok. Uh, in your trained experience, um, what are digital scales used for?
>
> [Stefanatos]: Uh, weighing out illegal narcotics.
>
> [State]:      Uh, would you typically find that on somebody that's a crack addict or a user?
>
> [Stefanatos]: No.
>
> [State]:      Who would you typically find that on?
>
> [Stefanatos]: Someone who would be [] distributing them?

[State]:        Dealing them?

[Stefanatos]: Yes, dealing them.

[State]:        Uh, that amount of cocaine, um, in your training experience would that be indicative or a lot for someone who's a user or crack addict?

[Stefanatos]: Well, most crack addicts you wouldn't hardly find crack on 'em unless you find 'em leaving a crack house, because they would smoke it immediately after purchasing.

[State]:        [I]s that a lot for a user to have?

[Stefanatos]: Yes it would be.

[State]:        Is that indicative of someone dealing?

[Stefanatos]: Yes.

[State]:        Uh, marijuana . . . same with the marijuana? Is that a lot of marijuana for someone to, uh, have a party with?

[Stefanatos]: Yeah[.]

[State]:        So where would you usually typically find that much marijuana?

[Stefanatos]: Uh, dealer.

Trial Tr. Vol. 2, pp. 263–64.[8]

---

[8] McMullen asserts that "Stefanatos's testimony, that the mere presence of drugs was indicative of dealing, was also objectionable" under Indiana Evidence Rule 403(b). Appellant's Br. at 42. Rule 403(b) prohibits relevance evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting

[38] During the detective's testimony in *Scisney*, the State consistently referred to the defendant when it recited specific facts of the case. 690 N.E.2d at 346. Here however, Sergeant Stefanatos is doing exactly what the *Scisney* court held was appropriate, "offer[ing] testimony as to whether particular facts tend to be more or less consistent with dealing in drugs." *Id.*

[39] Distinguished from *Scisney*, the State did not mention McMullen specifically to Sergeant Stefanatos throughout the challenged testimony, and it did not present Sergeant Stefanatos with overtly particular facts pertinent to McMullen's case. Moreover, the State never referred to McMullen as a suspected dealer in its questioning of Sergeant Stefanatos. *See Scisney*, 690 N.E.2d at 346 n2 ("The fact that [the detective] testified to whether specific facts of the case were consistent with drug dealing is not problematic in itself. Rather, we find it disturbing that the conclusions followed immediately after he had concluded the person to be a 'suspect dealer.'"). For these reasons, Lewis was not deficient for failing to object to Sergeant Stefanatos's admissible testimony.[9] *See Overstreet*, 877 N.E.2d at 155.

---

cumulative evidence." However, as can be seen from his testimony above, Stefanatos did not testify that the *mere presence* of drugs was indicative of dealing. Thus, Stefanatos's testimony was not prejudicial, misleading, or confusing.

[9] And even if Lewis was deficient for failing to object to Sergeant Stefanatos's challenged testimony, the testimony does nothing more than explain to the jury that: (1) digital scales are typically used for weighing narcotics; and (2) the amount of cocaine and marijuana recovered was indicative of someone dealing. This does nothing to rebut McMullen's defense at trial that the cocaine was not his. And McMullen was not convicted of dealing marijuana or cocaine. Thus, McMullen has failed to persuade us that there is a reasonable probability that the outcome of his trial would have been different but for Sergeant Stefanatos's testimony.

*E. Testimony from Detectives about Drug Activity at Greentree*

[40]     McMullen next contends that Lewis was ineffective for failing to object to testimony from two detectives about past drug activity at Greentree. Specifically, Grant County Sheriff's Department Detective Michael Andry testified that he "worked several narcotics investigations and criminal activity" at Greentree. Trial Tr. Vol. 1, p. 194. And Detective Kauffman testified that he had conducted investigations at Greentree in the past. Trial Tr. Vol. 2, p. 373. McMullen asserts that the detective's testimony "was unduly prejudicial and inadmissible under Evidence Rules 403 and 404(b)." Appellant's Br. at 43. We disagree.

[41]     Indiana Evidence Rule 403(b) prohibits relevance evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." There is nothing prejudicial or misleading about the detective's statements regarding previous experience conducting investigations at Greentree. And the statements do not contain *any* reference to McMullen, either explicitly or implicitly. Thus, testimony from the two detectives was not unduly prejudicial under Rule 403. *Cf. Hernandez v. State*, 785 N.E.2d 294, 300 (Ind. Ct. App. 2003) (statements from an officer indicating that defendant's business was engaged in prostitution when defendant was on trial for prostitution were unduly prejudicial), *trans. denied.*

[42]     The detective's testimony also does not run afoul of Rule 404(b) because the statements do not mention any character trait of or wrongful act by McMullen.

*See Dixson*, 865 N.E.2d at 712. Accordingly, Lewis was not ineffective for failing to object to the detective's admissible testimony about previous experiences at Greentree. *See Overstreet*, 877 N.E.2d at 155.

### III. Failure to Present Mitigating Evidence at Sentencing

[43] McMullen next argues that Lewis was ineffective during the sentencing hearing because he: (1) failed to conduct a reasonable investigation of McMullen's character; (2) failed to arrange for McMullen to receive an evaluation from a mental health professional; and (3) failed to present sufficient evidence of mitigating circumstances. Appellant's Br. at 48. McMullen must show both that Lewis performed deficiently at the sentencing hearing and that McMullen was prejudiced by any deficient performance. *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002), *trans. denied*. McMullen has not met that burden.

[44] We initially note that Lewis did argue several mitigating circumstances at McMullen's sentencing hearing including that: (1) despite McMullen's lengthy criminal history, most of his offenses were for minor violations; (2) McMullen's criminal records showed a pattern of him being overcharged; (3) McMullen does not blame anyone else for his conduct; and (4) McMullen was abused and neglected as a child. *See* Trial Tr. Vol. 2, pp. 493–96. Moreover, because of the presentence investigation report, the sentencing court was already well aware of McMullen's background and any mental health concerns. Appellant's Trial App. Vol. 2, pp. 165–78.

McMullen challenged his sentence on direct appeal, and a panel of our court noted:

> McMullen has been incarcerated on several occasions; has violated the terms of adult probation; has been cited several times for misconduct in the Grant County jail; has been charged with eighteen additional crimes that were later dismissed; and, as of sentencing, had attempted murder, Class D felony criminal recklessness, and Class C felony battery by means of a deadly weapon charges pending. We find McMullen's numerous firearms-related convictions to be particularly disturbing. McMullen's multitudinous juvenile adjudications, criminal convictions, and other contacts with the criminal justice system have not caused him to reform himself. The nature of McMullen's offenses and his character justify his maximum sentence.

*McMullen*, 2011 WL 2507057, at *6. And the post-conviction court echoed our court's conclusions in its order when it explained:

> McMullen had been offered many different opportunities prior to the incidents in question to rehabilitate his behavior, including probation, placement at the Youth Opportunity Center, placement at George Junior, cognitive behavioral therapy, behavioral aftercare, POOL School, Family Services Homebased Program, alcohol and drug counseling, and intensive outpatient treatment, in addition to the intermediate punitive sanctions of license suspensions, detention, house, arrest, and jail. Throughout the course of his criminal history, he had demonstrated no interest in changing his criminal behavior.
>
> ***
>
> Thus, what was outcome-determinative at sentencing was not the quality of the argument that his attorney made on the day of

sentencing, but rather McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing.

Appellant's PCR App. pp. 215, 217.

[46] We agree. The additional mitigating evidence that McMullen argues could have been offered by his friends and family, *see* Appellant's Br. at 51–52, would not have favorably impacted his sentence. Moreover, that same evidence would have done nothing to account for or explain the illegal possession of marijuana and cocaine for which McMullen was convicted. *Cf. McCarty v. State*, 802 N.E.2d 959, 963–969 (Ind. Ct. App. 2004) (holding that trial counsel was ineffective where defendant was convicted of child molestation and prior to sentencing counsel failed to investigate defendant's mental disability, defendant's molestation as a teenager, and that defendant would respond well to treatment), *trans. denied*.

[47] For these reasons, we find that there is no reasonable probability that McMullen would have received a different sentence if Lewis would have argued more or different mitigating circumstances at sentencing. *See Johnson v. State*, 832 N.E.2d 985, 1005 (Ind. Ct. App. 2005), *trans. denied*; *McCarty*, 802 N.E.2d at 967 (explaining that "[t]he dispositive question in determining whether a defendant is prejudiced by counsel's failure at sentencing to present mitigating evidence is what effect the totality of the omitted mitigation evidence would have had on the sentence."). Accordingly, McMullen has failed to demonstrate that he received ineffective assistance of counsel at sentencing.

## IV. Cumulative Error

[48] McMullen's final claim of ineffective assistance of trial counsel is that he was prejudiced by the cumulative effect of Lewis's alleged errors.[10] Our supreme court has explained that errors by trial counsel which are not by themselves sufficient to prove ineffective assistance of counsel may add up to ineffective assistance when viewed cumulatively. *French*, 778 N.E.2d at 826. However, we have determined that McMullen's claims that he received ineffective assistance of counsel are without merit, either because Lewis's performance was not deficient, or because McMullen was not prejudiced by any alleged deficient performance. *See Myers*, 33 N.E.3d at 1114 (holding that "[a]lleged trial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together.") (citations and internal quotation omitted).

[49] Moreover, we cannot say that any of Lewis's alleged errors cumulatively did substantial damage to McMullen's defense, i.e., that someone else placed the cocaine in the cabinet. The jury heard testimony from Garrett that she went to the apartment to buy cocaine from McMullen on January 8, 2009. Officers then watched as at least five individuals went in and out of the apartment for short periods of time—conduct that is indicative of drug related activity. When officers executed the search warrant on the apartment, they obtained nearly

---

[10] The post-conviction court did not explicitly address this issue in its conclusions of law.

eighteen grams of cocaine, one kilogram of marijuana, a nine-millimeter handgun, and a digital scale. Although there was no identifiably available fingerprints or DNA found on the baggie of cocaine, the State established that the DNA found on the baggie of marijuana was consistent with McMullen's DNA. And McMullen's fingerprints were found on the baggie of marijuana. All of the items were located next to each other in a kitchen cabinet. McMullen was also alone in the apartment with an infant when the search warrant was executed. For these reasons, there is no reasonable probability that the accumulation of Lewis's alleged errors made a difference at McMullen's trial. *See French*, 778 N.E.2d at 826–27. Accordingly, we do not find any cumulative error.

## Ineffective Assistance of Appellate Counsel

[50] McMullen also claims that his appellate counsel, C. Robert Rittman ("Rittman"), was constitutionally ineffective. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel, i.e., McMullen must show that Rittman's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for Rittman's deficient performance, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)), *trans. denied*. McMullen contends that Rittman was ineffective in two ways, and we will address each in turn.

## I. Failure to Properly Challenge the Search and Seizure of Evidence

[51] McMullen first argues that Rittman failed to adequately challenge the search and seizure of evidence on appeal. Our supreme court has explained that claims of inadequate representation on an issue that was not found waived in the direct appeal "are the most difficult for convicts to advance and reviewing tribunals to support" for two reasons. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997).

[52] First, "these claims essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether the new record citations, cause references, or arguments would have had any marginal effect on their previous decision." *Id.* And second, our court is not limited to a review of the "facts and cases cited and arguments made by the appellant's counsel. We commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party." *Id.*

[53] Here, McMullen specifically argues that Rittman failed to raise "several important points and arguments, favoring suppression[.]" Appellant's Br. at 61. First, McMullen contends that Rittman failed to include several facts to demonstrate that Gause was a government actor when he entered Glasser's apartment. However, our court had access to each piece of evidence that McMullen claims Rittman was ineffective for failing to bring to this court's attention. *See* Appellant's Trial App. Vol. 1, pp. 22, 75, 106, 120–21, 127. And in McMullen's direct appeal, a panel of this court reviewed the evidence addressing Gause's status as a government actor and found that "the trial court

reasonably concluded that Gause was not acting as an agent or instrument for the State when he entered the apartment to spray for pests." *McMullen*, 2011 WL 2507057, at *4.

[54] McMullen also alleges that if Rittman had cited to this court's opinion in *Shultz v. State*, 742 N.E.2d 961 (Ind. Ct. App. 2011), *trans. denied*, that "there is a reasonable probability the court would have found that [the officers] looking into the window [of the apartment] constituted an illegal search." Appellant's Br. at 63.[11] But in *Shultz*, officers wiped dirt off of a vehicles wheel well to reveal a partial VIN, and they toured the defendant's property after no one answered the door. *Shultz*, 742 N.E.2d at 965–66. Here, there was an active warrant for McMullen's arrest, two police officers identified McMullen before entering the apartment, and an officer saw McMullen in the apartment through partially opened blinds. Moreover, Detective Allen confirmed McMullen was inside the apartment before police knocked. Simply put, *Shultz* is readily distinguishable from the case before us, and even if Rittman had cited to it in his brief, it would not have changed our court's decision in McMullen's direct appeal. *See Bieghler*, 690 N.E.2d at 196 (holding that relief on an ineffectiveness challenge resting on

---

[11] We also note that it is likely that the panel that handled McMullen's direct appeal was well aware of S*hultz v. State* even without Rittman citing to it in his brief. On appeal, "[w]e commonly . . . perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party." *Bieghler*, 690 N.E.2d at 195. And McMullen's trial counsel cited to *Shultz* in the motion to suppress, *see* Appellant's Trial App. Vol. 1, pp. 33–34, which was also before our court in McMullen's direct appeal.

appellate counsel's presentation of a claim is "only appropriate when the appellate court is confident it would have ruled differently.").

[55] For all of these reasons, we find that there was nothing unreasonable or prejudicial about Rittman's presentation of the search and seizure issue on appeal.

## II. Failure to Challenge Exclusion of Evidence of Bias

[56] McMullen next argues that Rittman was ineffective because he failed to challenge on appeal the exclusion of evidence that another witness was charged with drug dealing. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Manzano*, 12 N.E.3d at 330. Indeed, our supreme court has warned that we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy," and we "should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006).

[57] McMullen specifically contends that Rittman was ineffective on appeal for failing to challenge the trial court's exclusion of Garrett's pending drug charge. Garrett had a charge for dealing at the time she testified in McMullen's trial, which was reduced to possession with an option for dismissal if she followed

through with drug counseling. McMullen alleges that "evidence of Garrett's dealing charge, the break she received from the State, and the possibility of having the case dismissed completely, was relevant to bias." Appellant's Br. at 64. And "[t]here was a reasonable degree of probability that Garrett was motivated to give her testimony, which was favorable to the prosecution, due to the pending dealing charge and her desire to have that case dismissed." *Id.* We disagree.

[58]     Garrett's pending drug charge and the deal she reached with the State were based on her participation in counseling and had nothing to do with her testimony in McMullen's case. When Garrett, a known drug user at the time, first gave her statement to police that she went to the apartment on January 8, 2009, to see McMullen, she had not been arrested and she was not working for the State as an informant. And at trial, Garrett admitted that she attempted to purchase cocaine from McMullen on January 8 but was unable to. Garrett's self-admission of attempted criminal behavior further diminishes McMullen's argument that Garrett was biased against him when she testified at trial. For these reasons, Rittman's decision not to challenge the trial court's exclusion of Garrett's irrelevant pending drug charge was not deficient. *See Graham v. State*, 941 N.E.2d 1091, 1099 (Ind. Ct. App. 2011) (noting that, to prove ineffective assistance of counsel, issues not raised must have been "obvious from the face of the record"). Accordingly, the post-conviction court properly concluded that McMullen was not denied the effective assistance of appellate counsel.

# Conclusion

[59] Based on the facts and circumstances before us, the post-conviction court did not clearly err when it rejected McMullen's claims of ineffective assistance of trial counsel and appellate counsel. Accordingly, we affirm the judgment of the post-conviction court denying McMullen's petition for post-conviction relief.

Riley, J., and May, J., concur.