

**FILED**

Nov 13 2018, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Yusuf Hotep-El, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 13, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-477 <br><br> Appeal from the Marion Superior <br> Court <br><br> The Honorable Alicia A. Gooden, <br> Judge <br><br> The Honorable Richard E. <br> Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1608-F5-32766 |

**Friedlander, Senior Judge.**

[1] Yusuf Hotep-El appeals the trial court's termination of his self-representation.
We affirm.

[2] In August 2016, Hotep-El was charged with possession of cocaine, a Level 5 felony;[1] two counts of possession of a narcotic drug, both Level 5 felonies;[2] possession of a controlled substance, a Level 6 felony;[3] driving while suspended, a Class A misdemeanor;[4] possession of marijuana, a Class B misdemeanor;[5] and later he was also alleged to be an habitual offender.[6]

[3] At his initial hearing on these charges, Hotep-El was appointed counsel to represent him. Subsequently, a motions hearing was held on February 15, 2017, at which Hotep-El, through counsel, requested permission to represent himself. Following a proper inquiry by the court, his request was granted with appointed counsel remaining as standby counsel.

[4] At a hearing in April, the court terminated Hotep-El's self-representation. The court stated that his abundant inappropriate filings as well as his statements and behavior in court caused it concern regarding his mental fitness. The court then reappointed standby counsel for the purpose of determining whether a competency evaluation was warranted.

---

[1] Ind. Code § 35-48-4-6 (2014).

[2] Ind. Code § 35-48-4-6.

[3] Ind. Code § 35-48-4-7 (2014).

[4] Ind. Code § 9-24-19-2 (2016).

[5] Ind. Code § 35-48-4-11 (2014).

[6] Ind. Code § 35-50-2-8 (2015).

[5] In May, defense counsel filed a combined notice of insanity defense and motion for psychiatric examination to determine Hotep-El's competence to stand trial, which the trial court granted. Dr. Olive and Dr. Parker were appointed to examine Hotep-El. Dr. Olive concluded he was competent. Dr. Parker, although unable to conduct a complete evaluation, formed an opinion that Hotep-El was capable of understanding the nature of the proceedings against him and assisting his counsel. At the pretrial conference and competency hearing in July 2017, the trial court found Hotep-El competent to stand trial based on the doctors' reports. Appointed counsel continued as counsel for Hotep-El.

[6] At the final pretrial conference in January 2018, the State asked the court to address the status of Hotep-El's representation. The court and defense counsel then attempted to ask Hotep-El if he wanted the public defender to represent him or if he wanted to represent himself, but he refused to answer the question.

[7] On the first morning of trial, defense counsel informed the court that Hotep-El was requesting to proceed pro se. The court denied the request and proceeded with the trial. The State dismissed the charge of driving while suspended, and the jury found Hotep-El guilty on all remaining charges and determined that he is an habitual offender. The court sentenced Hotep-El to an aggregate sentence of ten years executed. He now appeals.

[8] Hotep-El contends the trial court improperly terminated his self-representation. The Sixth Amendment guarantee of a defendant's right to counsel encompasses

the right of a defendant to represent himself. *Hopper v. State*, 957 N.E.2d 613 (Ind. 2011) (citing *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). Yet, this right is not without limits. The United States Supreme Court recognized that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46.

[9] While the trial court terminated Hotep-El's right to proceed pro so at a hearing in April 2017, a timeline of events and background information prior to and following that hearing is helpful to our discussion. At Hotep-El's initial hearing, counsel was appointed to represent him. Despite that, he sent numerous pro se documents to the court throughout January and February 2017. Some of these documents were entitled "Averment of Jurisdiction – Quo Warranto," "Affidavit of Fact – Writ of Discovery," and "Affidavit of Error." Appellant's App. Vol. II, pp. 71-133. Many of these documents contained the following, or a similar, heading:

THE MOORISH NATIONAL REPUBLIC FEDERAL
GOVERNMENT NORTHWEST AFRICA
THE MOORISH DIVINE AND NATIONAL MOVEMENT
OF THE WORLD.
Northwest Amexem/Northwest Africa/North America.
'The North Gate'.
Societas Republicae Ea Al Maurikanos.
Aboriginal and Indigenous Natural Peoples of the Land.
The true and de jure Al Moroccans/Americans

*Id.* at 71. In addition, several showed copies being sent to people or organizations such as the United Nations, the International Criminal Court, the International Court of Justice, Interpol, the President of the United States, the U.S. Department of State, and the U.S. Justice Department. *See id.* at 72. On February 7, 2017, the court issued an order denying Hotep-El's pro se requests because he was represented by counsel and explaining that Trial Rule 11 requires pleadings and motions to be signed by an attorney when a party has representation.

[10] At the motions hearing in February 2017, defense counsel informed the court that Hotep-El did not want counsel to represent him and that he wanted to represent himself. The court asked Hotep-El if he understood what a jury trial is and that he was charged with felony charges. Hotep-El answered affirmatively. The court further inquired as to Hotep-El's education, understanding of trial procedure, and mental health history. Hotep-El informed the court that he has a GED and culinary arts training, that he has experienced several jury trials, and that he had never been treated for any mental illness. The court instructed Hotep-El that his opponent would be a trained lawyer, that he would be held to the same standard as an attorney, and that he would be expected to know the rules of evidence, investigate, engage in plea negotiations, conduct voir dire, make opening and closing arguments, subpoena witnesses, and preserve issues for appeal. *See* Tr. Vol. 2, pp. 5-10. After receiving Hotep-El's acknowledgment that he understood what would be required of him, the

court granted his request to represent himself and ordered appointed counsel to remain as standby counsel.

[11] Once Hotep-El's request to represent himself was granted, the court asked for his contact information. He stated his mailing address and his email address. However, when the deputy prosecutor asked him to write his email address on paper, Hotep-El replied that he did not "consent to filling out any documentation, for the record." *Id.* at 15. Hotep-El then told the court he wanted to read his documentation into the record and stated, "Department of jurisdiction, Code 1, sir, for the record, to be read into the record. Notice to Agent is notice to principle, notice to principle is notice to agent." *Id.* at 16. He continued, "According to the Canon, Rule of 2.6, I'm showing a right to be heard." *Id.* The court informed Hotep-El:

> There are certain formalities, there's certain evidentiary rules of things that we have to follow as attorneys in court. You're held to that same standard. If you become obstructive, particularly in front of the jury, then you can forfeit your right to represent yourself. You can even forfeit your right to be present during trial. Do you understand that? I'll let you represent yourself, but you're going to follow procedures and rules.
>
> *****
>
> Like I say, we are certainly happy to let you represent yourself, but if you become such a distraction because of your stubbornness, I'm just giving you a warning on that, that you won't be representing yourself, okay?

*Id.* at 17, 22. Hotep-El replied that he understood and then asked, "I have a question. I'm on this electronic house monitor on the (inaudible) arrest and

coercion and I do not consent to any confinement, detainment, anything that lines up with that. So could you order that this be taken off my leg?" *Id.* at 22. The court denied his motion.

[12] In March 2017, there was again a flurry of filings by Hotep-El with documents entitled "Affidavit of Fact," "Writ of Mandamus," "Legal Notice of Removal," and "Averment of Jurisdiction – Quo Warranto." *See* Appellant's App. Vol. II, pp. 154, 168, 171, 173, 177, 189, 194, 199. One such Writ of Mandamus states, in part:

> COMES NOW, Yusuf Hotep-El, Natural Person, In Propria Persona Sui Juris (not to be confused with, nor substituted by, Pro Se by unauthorized hand of another). I am Aboriginal Indigenous Moorish-American; possessing Free-hold by Inheritance and Primogeniture Status; standing squarely Affirmed, aligned and bound to the Zodiac Constitution, with all due respect and honors given to the Constitution for the United States Republic, North America. Being a descendant of Moroccans and born in America, with the blood of the Ancient Moabites from the Land of Moab, who received permission from the Pharaohs of Egypt to settle and inhabit North-West Africa/North Gate. The Moors are the founders and are the true possessors of the present Moroccan Empire; with our Canaanite, Hittite and Amorite brethren, who sojourned from the land of Canaan, seeking new homes. Our dominion and inhabitation extended from Northeast and Southwest Africa, across the Great Atlantis, even unto the present North South and Central America and the Adjoining Islands-bound squarely affirmed to THE TREATY OF PEACE AND FRIENDSHIP OF SEVENTEEN HUNDRED AND EIGHTY-SEVEN (1787) A.D. superseded by THE TREATY OF PEACE AND FRIENDSHIP OF EIGHTTEEN [sic] HUNDRED AND THIRTY-SIX (1836) A.D. between Morocco and the United States

(**http://www.yale.edu/lawweb/avalon/diplomacy/barbary/b arl866t.htm** **or at Bevines Law Book of Treatises)** the same as displayed under Treaty Law, Obligation, Authority as expressed in Article VI of the Constitution for the United States of America (Republic).

*Id.* at 173.  Hotep-El also accused the trial court judge of violating her oath of office to uphold the U.S. Constitution, claimed she did not have jurisdiction to hear the case, and accused her of knowingly committing fraud.  *See id.* at 174. On March 24, 2017, the court issued its "General Order Regarding Miscellaneous Filings" in which it noted that Hotep-El's filings did not appear to pertain to his pending criminal action, struck all documents as improper, and admonished Hotep-El that future filings not complying with the trial rules or pertaining to the pending cause would also be struck.

[13]  In April, the court held a hearing on a notice of a pretrial release violation which alleged that Hotep-El had failed for five days to report for home detention and to be hooked back up to GPS monitoring for this case after he was arrested and released on new charges of driving while suspended and refusing to identify himself.  At the hearing, this colloquy ensued:

> THE DEFENDANT:  I'm not in need of the Public Defender's Agency.

> THE COURT:  All right.  I know I—I think you are representing yourself in your current case.  Do you understand that?

> THE DEFENDANT:  Yeah.  For the record, I In Propria Persona.

*****

THE COURT:  Mr. El, how do you plan on representing yourself [at the contested hearing for the pretrial release violation/probation violation]?

THE DEFENDANT:  Through starting, going on documentation, studying court rules, studying evidentiary rules, like I've been doing.  And for the record, My Honor, filed on April 3rd, 2017, a violation of jurisdiction, (inaudible) for the record to be read into the record, notice to agent.  There's no —

THE COURT:  All right.  I know where you're going with this.  You have a lot of what I would consider unorthodox laws and views that you want to bring up that I don't recognize.  Do you understand what a jury trial is?

THE DEFENDANT:  For the record, you—I definitely understand, but what is so unorthodox about my (inaudible)?

THE COURT:  What is a jury trial?

THE DEFENDANT:  What I'm reading, what makes what I'm reading unorthodox?

THE COURT:  Tell me what a jury trial is.

THE DEFENDANT:  I'm not here to exercise any law or practice any law, I mean we all are here.  I mean [sic] tell you what a jury trial, I'm not trying to be disrespectful, My Honor, but I—

THE COURT: Well, I'm asking you on the record what is a jury trial?

THE DEFENDANT: I mean what are you asking me this for, My Honor? I mean I'm [sic] just now told you I understand what a jury trial is.

THE COURT: Because you're acting somewhat disorderly today and I'm a little concerned about your ability to represent yourself under the laws that you're going to have to represent yourself on. Okay? So I'm just asking you some simple question[s], what's a jury trial?

THE DEFENDANT: Well, I do not choose to exercise any, you know, on the record for the record, I'm not trying to exercise any [sic] what a jury trial is, what any words mean.

THE COURT: All right. So you're just—you're not going to answer that question?

THE DEFENDANT: No, I don't refuse to answer anything, My Honor.

THE COURT: Well—

THE DEFENDANT: I'm just not understanding the question that you're asking.

THE COURT: Well, I'm going to give you one more chance. It's not a hard question, tell me what a jury trial is.

THE DEFENDANT: A simple—I mean something that you have a trial with juries on.

THE COURT:  Okay.  What do they do?

THE DEFENDANT:  You have 12 peers, or six peers on some cases.

THE COURT:  Okay.

THE DEFENDANT:  To decide, make decisions on crimes, whether you're guilty or not guilty.

THE COURT:  Okay.  All right.

THE DEFENDANT:  And proven beyond a reasonable doubt.

THE COURT:  How do you pick a jury?  How do you go to pick a jury?

THE DEFENDANT:  Well, (inaudible) I explain exactly what a jury was, I get to exercise my right.  I mean I don't see how this pertains—

THE COURT:  Well, I mean I'm going to go through this.  I want to see if you're competent to represent yourself at this point.

THE DEFENDANT:  I am, My Honor.

*****

THE COURT:  Based on what I've heard, I'm a little concerned right now of a lot of different things regarding your ability to represent yourself in this case; also based on some of the things

I've heard about your activities at the Track Group the other day, and I know it's just allegations at this point.

So, I am going to appoint the Public Defender office to represent you in this probation violation. I am going to appoint the Public Defender's Office to represent you in your current case, the Level 5 felony case, and I'm also going to order an examination by a couple of psychiatrists just to—

THE DEFENDANT: Well, I object.

THE COURT: —just to [sic] as to your competency at this point, sir.

THE DEFENDANT: Well, I object, My Honor. For the record, I—

THE COURT: I know you do.

THE DEFENDANT: I do not consent to a psychiatrist.

THE COURT: Okay.

THE DEFENDANT: And for the record, I—

THE COURT: Actually, what I will do—actually, I'll appoint the Public Defender's Office to represent you and then I'll wait for their determination—

THE DEFENDANT: Well—

THE COURT: —but I honestly think—

Well, let me put it this way, at this point I am going to order him examined as to his competency to stand trial at this stage.

THE DEFENDANT:  Well, for the record, My Honor, so we definitely—I mean I do not need the services of the Public Defender Agency.

THE COURT:  Well, I don't know.  If the Public Defender meets with you again, if the psychiatrists meet you and say you're fully competent, you understand what—

THE DEFENDANT:  Well, I see—I see, for the record, you all being—you all being restricting my documents from the record.

THE COURT:  Sir, you're interrupting me.

THE DEFENDANT:  I'm not trying to interrupt you.

THE COURT:  Okay, you're interrupting me.

THE DEFENDANT:  Okay.

THE COURT:  If you meet with the Public Defender and the psychiatrists give you a clean bill of health, then I don't see why you couldn't represent yourself, but right now, you're also demonstrating an inability to follow the Court's rules because Judge Gooden, some weeks ago, issued orders on what motions you would—can file and what you can't.  I don't have the order in front of me, but I know that there have been a lot of motions, her orders striking everything you're filing because you're not complying with the Rules of Procedure.

THE DEFENDANT:  Okay.  Now—

THE COURT: So that also tells me that you're not doing a very good job representing yourself right now.

*****

THE DEFENDANT: I mean I—for the record, I do not consent to any further jail time, prison time.

THE COURT: I understand, but again, your behavior has warranted this. You have not followed the rules regarding the pleadings that you filed. You're talking something about Moorish law that doesn't even apply to your case.

THE DEFENDANT: Well, for the record, My Honor, I would like to explain this to you. Well, I know I know [sic] that the delegation of authority the Prosecution is supposed to provide, due to the fact that the Prosecution has brought forth the allegations or whatever criminal charges that I am facing. And the delegation of order of authority would clearly tell me what the position is of the commissioners and the magistrates, and administration of these—of this venue.

Now, the oath of office is just the oath of office to the Constitution. Now these things—these is all the things, all the (inaudible) unorthodox. If one that took the oath to the Constitution in there, and me asking for the oath of office to the Constitution, that's not unorthodox to me.

THE COURT: Okay.

THE DEFENDANT: And my documentation speaks clear, it's not veering off or anything—

THE COURT: —Well, here's another—Mr. Hotep-El, here's another problem we have is that 49G21-1309-FD-58514, that is the case you're here for on a probation violation. You have continually, allegedly continually tested positive for use of drugs. And a person that is allegedly using drugs, I would think would have a harder time representing himself. I'm not saying that you've been found guilty of anything, but that's just another fact that I have to consider as to your ability to do this.

\*\*\*\*\*

THE COURT: —All right. With all that's going on, and again, I'm going to repeat this, you continually file irrelevant pleadings that have been stricken, the allegations of drug use on your behalf. You're not showing up—

THE DEFENDANT: Well, I would like to object for the record. It sounds like you're practicing law from the bench.

THE COURT: —not showing up—sir—

THE DEFENDANT: —it sounds like you're practicing law from the bench—

THE COURT: —not showing up for your Community Corrections or pretrial release afterward. All this tells me that there is an issue as to your competency at this point. One more time, I am going to appoint a Public Defender's Office to represent you, both of these case[s], and I am going to order an independent—two psychiatrists to review you for competency at this point.

Tr. Vol. 2, pp. 28, 29-31, 32-34, 35-36, 38.

[14]     The court's order from the hearing states, in part:

> The Court further now questions the Defendant's ability to
> represent himself. He has repeatedly violated the Court[']s Order
> in [this case] by filing inappropriate and improper pleadings
> based on "Moorish Law[."] He has exhibited irrational behavior
> in court and there are now allegations of menacing behavior that
> have been brought to the attention of the court during the
> hearing. The court takes note of the Defendant[']s criminal
> history and drug use.
>
> As Such the Court now appoints the Office of the Public
> Defender to represent the Defendant in these cases. Since the
> Defendant is now represented by Counsel, the court leaves the
> decision as to competency evaluation to appointed counsel and
> does not now order the same.

Appellant's App. Vol. II, pp. 226-27.

[15]     The trial court should not grant a defendant's request for self-representation unless it is satisfied that the defendant has the mental capacity to understand the proceedings. *Ellerman v. State*, 786 N.E.2d 788 (Ind. Ct. App. 2003). As the transcript and the court's order demonstrate, the court reappointed the public defender, who had been acting as standby counsel, for the purpose of determining whether a competency evaluation was warranted and specifically explained on the record its concern that Hotep-El may not be competent to stand trial. Although the trial court had previously questioned Hotep-El concerning his waiver of counsel at the hearing in February, his conduct and filings over the intervening months, as well as his colloquy with the court at the

April hearing, so concerned the court that it believed his competency to stand trial may need to be examined by experts.

[16] Moreover, "[a] trial judge may terminate self-representation by a defendant who deliberately engages in serious or obstructionist misconduct." *German v. State*, 268 Ind. 67, 73, 373 N.E.2d 880, 883 (1978) (citing *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)). Indeed, trial judges "'confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.'" *Gilmore v. State*, 953 N.E.2d 583, 592 (Ind. Ct. App. 2011) (quoting *Allen*, 397 U.S. at 343).

[17] As the record here demonstrates, Hotep-El had submitted filings in violation of court orders, disrupted and impeded court proceedings with statements concerning irrelevant, nonsensical subjects, and had exhibited evasive/argumentative behavior such that the court had difficulty distinguishing between his genuine inability to understand the proceedings (i.e., competency to stand trial) and his intent to impede them (i.e., deliberate obstructionist behavior). Thus, the trial court did not abuse its discretion in determining reasonable grounds existed for seeking a determination of Hotep-El's competency to understand the proceedings and to stand trial. *See Benefiel v. State*, 716 N.E.2d 906 (Ind. 1999) (whether reasonable grounds exist to order evaluation of competency is within sound discretion of court). Further, given the circumstances of this case and Hotep-El's obstreperous behavior, the trial

court did not err in terminating, or at least suspending, his self-representation while it obtained such a determination.

[18] Following the termination in April of Hotep-El's self-representation for the purpose of determining his competency to stand trial, his obstructionist behavior continued. In addition, he never asserted a clear and unequivocal request to again proceed pro se. Once the trial court reappointed counsel, counsel moved for a psychiatric evaluation. The court appointed Doctors Olive and Parker to evaluate Hotep-El. Following his examination of Hotep-El, Dr. Olive concluded he was competent and possessed sufficient ability to consult with his attorney and understand the proceedings against him with a reasonable degree of rational understanding. Dr. Parker, on the other hand, was unable to complete a formal evaluation because Hotep-El abruptly left the interview after only a few minutes. Nevertheless, based on the brief interview and the available records, it was Dr. Parker's opinion that Hotep-El was capable of understanding the nature and objectives of the proceedings against him and assisting his counsel, though he might not be willing to cooperate with either. Dr. Parker noted that Hotep-El is a follower of a set of fringe political beliefs known as the sovereign citizen movement, which he described as using odd interpretations of both federal and state laws and constitutions to conclude that they do not apply to these citizens. He further characterized the followers of this movement as typically serving as their own counsel, filing unconventional motions in an attempt to frustrate the court proceedings, and generally competent to stand trial as they typically do not have a serious mental illness.

[19] In May, Hotep-El filed correspondence with the court indicating he did not consent to the public defender taking his case and complaining that he had not heard from defense counsel and that counsel had a conflict of interest. Further correspondence accused defense counsel of violating the rules of professional conduct and declined his services while also stating that Hotep-El did not waive any of his rights. *See* Appellant's App. Vol. II, pp. 228, 240.

[20] At the pretrial conference/competency hearing in July, the trial court found that Hotep-El was competent to stand trial based upon the doctors' reports. At the end of the hearing, Hotep-El stated:

> THE DEFENDANT: Well, for the record I am not (inaudible) man. The court continues to have these gentleman [sic] on my— on this—this suit, when I—I clearly have made record that it's a conflict of interest, due to this fact it's prejudice of my nationality and things, and things like that, but the Court continues to force this attorney on me.
> For the record, on the record, and let the record reflect I'm in proper persona (inaudible). I'm here on the threat, duress, and coercion.
> Furthermore, I do not consent to any other jail time, prison time, to finally detain me, and I demand that this Court dismiss all the suits, and for the record, on the record, and let the record reflect.
>
> *****
>
> No, matter, I filed a removal with the Federal Court, and I've also sent to the tribunal the consent sheet. I want to know if you have signed the documentation to transfer this to the Federal Court, for lack of jurisdiction; one other issue which the tribunal has got a copy of the documentation?
>
> *****
>
> For the record I have not consent [sic] to proceed.

THE COURT: I understand.

THE DEFENDANT: The Court has not prove—proven jurisdiction, judicial must be proven—

THE COURT: I understand.

THE DEFENDANT: —or the town. So it's versus United States.

Tr. Vol. 2, pp. 47-49.

[21] Throughout July, August, September, October, November, and December of 2017, and January and February of 2018, Hotep-El continued to file pro se documents with the court. These filings are filled with illogical and nonsensical statements and alleged theories of law. *See* Appellant's App. Vol. III, pp. 17-22, 28-30, 33, 34, 37-39, 41, 93, 96-97, 100-102, 104-106, 113-128, 135-40, 147-51, 183-221, 238-39; Appellant's App. Vol. IV, pp. 2-8. In response, the court issued orders stating he was represented by counsel and citing Trial Rule 11. *See* Appellant's App. Vol. III, pp. 26, 42, 45, 94, 109, 131, 143, 222; Appellant's App. Vol. IV, p. 9.

[22] In addition, in October Hotep-El filed with the court an "Affidavit to Dismiss Public Defender" in which he requested dismissal of the public defender due to a conflict of interest and deterioration of their relationship. Yet, he also stated, "the Petitioner is exercising rights to self representation and do [sic] not waive his rights to a [sic] attorney." Appellant's App. Vol. III, pp. 104-06. He filed similar documents with the court in November and again in January 2018. *See id.* at 113-14, 207-08, 238-39.

[23] At the final pretrial conference in January 2018, the State noted Hotep-El's previous requests to represent himself and the results of his competency evaluations and inquired as to the status of the situation. The court and the parties responded:

> THE COURT: Well, I mean, I did, we had a hearing on this, and you know, it was my ruling at the time based on—and I can't go back and recreate the wheel on all my thought processes, but I did find that with what was going on that he did—was not legally competent to represent himself. I denied his right to go pro se in this case.
>
> Is that still what he wants to do?
>
> [DEFENSE COUNSEL]: Mr. Hotep-El, what do you want to do? Do you want me to represent you, or do you want to represent yourself, or what?
>
> THE DEFENDANT: For the record, I'm Yusuf Hotep-El, In Propria Persona (inaudible) to the jury, here by special appearance (inaudible). I continue to exercise my rights and reserve them, and I will respectfully demand that this Court continue to reserve all my rights.
>
> And for the record, I've been—I mean, I've been in propria persona, (inaudible). Since no matter when the Court addressed or said that I was incompetent, I haven't stopped filing my documents. I have continued to file in proper personas to the jurors. I haven't waived any of my rights.
>
> For the record, with all due respect the Court has no right—no right or no authority to weigh any of my rights. Today I'm here to address, you know, the—the tax matter, and—
>
> THE COURT: The tax matters?
>
> THE DEFENDANT: Well, I sent—I sent it via certified mail, certified numbers 7013171000019184890. The tax 156. For the record, on the record you were provided with executor and

appointed as—as a co-trustee (inaudible). And like I said, I have documents to tender, for the record, on the record, and let the record reflect.

THE COURT: All right. I'm not sure what to make of all that, but—

[DEFENSE COUNSEL]: Well, just answer the man's question, do you want to represent yourself, or do you want me to represent you?

[THE DEFENDANT]: I am in Propria persona.

[STATE]: Okay. So I think the record is clear, as clear as it's going to get.

THE COURT: No. He hasn't answered my question.

THE DEFENDANT: Yeah. I do not consent to proceeding, but I'm—I am in proper persona, two jurors. I am going to representing—

THE COURT: What does that—

THE DEFENDANT: I am in my proper self.

THE COURT: —mean, you're in propria persona?

THE DEFENDANT: I'm in my proper self.

THE COURT: Okay. You're in your proper self?

THE DEFENDANT: Yes, sir.

THE COURT: But do you want [defense counsel] to be your attorney at trial?

THE DEFENDANT: Well, for the record, on the record, like I said, I have to continue to reserve my rights. He's—he was appointed by the Court.

THE COURT: Right.

THE DEFENDANT: And it's not disrespect to him, I mean, he's always represented the corporation, he can never represent. He also (inaudible) up here. Because once again I'm in propria persona.

THE COURT: So whether he sits there or not you think that you're in proper persona?

THE DEFENDANT: It's a fact.

THE COURT: Okay.

[DEFENSE COUNSEL]: The record has to be clear.

THE DEFENDANT: I have answered the question. I'm not the right representative. I'm the attorney of facts, so therefore I'm in propria persona.

Tr. Vol. 2, pp. 59-61.

[24] And then:

THE COURT: I am not going to allow this man to represent himself, when he's sitting here telling me he wants to address tax issues. I don't know that he understands even what he's here for today. **I know he's legally competent. I don't know whether this—if this is an act, or what's going on, but he is currently not component [sic] to be an attorney for himself.**

[STATE]: Okay.

THE COURT: I think I made that ruling—

THE DEFENDANT: Well, I'd like to object, are you a doctor, My Honor.

THE COURT: You can object all you want at that this point Mr. [Hotep-El]. **I have made that ruling in this case, and that's**

**based on a lot of different factors. The violations of [Judge Gooden's] file, the continuing stream of I guess sovereign citizen type of filings. The fact that when I address questions to you about your case, all I hear are issues about taxes, and things at in persona, whatever.**

But, [defense counsel], you will be his attorney for trial.

\*\*\*\*\*

**But I know from what I've seen of this man, my experience is that I don't know that we could ever get through a trial with all the documents he wants to put in, the tax issues he wants to raise.**

As a matter [sic] fact, I actually feel like if he represented himself he would not be around at trial very long, because he would have to be removed because of all the stuff.

[DEFENSE COUNSEL]: I think this would be an [appropriate] time for the Court to inform Mr. Hotep-El of what would be expected of his demeanor at trial. If I'm going to represent him, then that means he cannot represent himself, and he can't be making—

THE COURT: Well—

[DEFENSE COUNSEL]: —objections, and—

THE COURT: No, he cannot and he cannot—

[DEFENSE COUNSEL]: Because—

THE COURT: —do anything except through his attorney. If you've got motions they have to be—

THE DEFENDANT: I don't have an attorney.

THE COURT: —through your attorney. If you—

[STATE]: You do now.

THE COURT: —at some point if you become disruptive to the proceedings, Mr. [Hotep-El], you will be—the Court can do a lot of things. I could bind and gag you, I don't prefer to do that, but at some point you risk not being at your jury trial, I may have to remove you.

THE DEFENDANT: Well, I object, for the record. I am not the corporation, I am Yusuf Hotep-El, in propria persona. I have—

THE COURT: Mr. [Hotep-El], we've gone through that. If you do not behave at trial you were [sic] forfeit your right to be at trial; do you understand that, sir?

THE DEFENDANT: No. I not—I not [sic] have waived of my rights.

*Id.* at 62-65 (emphasis added). As the hearing was concluding, Hotep-El continued:

THE DEFENDANT: Well, for the record mine—I still have my documents to file. I have my documents to tender.

THE COURT: You can give those to your attorney. If he thinks that they're relevant to any issues in this case he—

THE DEFENDANT: I don't have an attorney—

THE COURT:  —will file them.

THE DEFENDANT:  —my Honor.

THE COURT:  He's sitting right—

THE DEFENDANT:  He's fired—

THE COURT:  —right next to you.

THE DEFENDANT:  —for the record.  And let the record reflect.

THE COURT:  You fired him?

THE DEFENDANT:  Yes.  He's fired.

THE COURT:  All right.  We'll see you February 1st, Mr. [Hotep-El].

*****

THE COURT:  We went off the record.  I just want to make it clear for the record that Mr. [Hotep-El] became very unruly and disruptive as he was leaving.  He indicated that his life was in danger, and that the officer had threatened him, and he's back there screaming now.

So, again, I'm making that for the record, because **it's been my continual belief that this man cannot represent himself, and I think he continues to give us evidence every time he comes to court.**  Okay.

*Id.* at 68-69 (emphasis added).

[25]   Finally, on February 1 the morning of trial, defense counsel informed the court that Hotep-El was requesting to represent himself. The court responded:

> THE COURT: And I understand that. But I think I've made quite a significant record of this over the last few months. I just did not feel that he's competent to represent himself as an attorney. And I'm not going to go through all the different reasons again. So I'm going to deny that motion.
>
> Mr. Hotep-El, I will tell you today that this is going to be a jury trial. We're going to conduct this in a civil manner. I know that you have been prone to voice your displeasure with many things at different times during your hearings in this case. But we need to act civilly today. You are represented by attorneys.
>
> You cannot speak to the jury or me unless it's through your attorneys. So we're just going to do this in a calm, civilized manner. You can forget your right to be here at any point if you become disruptive. Do you understand that, Mr. Hotep-El?
>
> THE DEFENDANT: Well, for the record, on the record and let the [sic] reflect, I am Yusuf Dunwayne Hotep-El In Propria Persona (inaudible)—
>
> THE COURT: Okay. Well, see, you're not going into legal things without your attorney commenting. I'm just asking for a yes or no. Do you understand the ground rules on proper behavior in this Court?
>
> THE DEFENDANT: And also, Your Honor, I've filed documentation with the Court which—

THE COURT: All right, Mr. El, apparently, you're not going to answer my question. So let's just say I've given you your warning, okay?

THE DEFENDANT: Well, for the record, my Honor, I have filed documentation with the Court—

THE COURT: All right. And I have rejected all your documentation because it has not been filed through your attorney.

*Id.* at 82-83. While the court and the attorneys discussed preliminary instructions, Hotep-El interrupted:

THE DEFENDANT: I want to place on the record that—

THE COURT: Mr. [Hotep-El], we're going to get off to a bad start. You have no right to say anything unless it's through your attorney at this point, okay?

THE DEFENDANT: They're fired, they're fired, they're fired, I don't need him on the—

THE COURT: Okay.

THE DEFENDANT: So, I mean, I'm just—

THE COURT: All right. Well, I've gone over the ground rules. The jury's not here yet. But I'm not going to give you too much rope based on your prior conduct. If you just disrupt these proceedings and are not proceeding in a civilized manner, you will forfeit your right to be here. Okay?

THE DEFENDANT: For the record, My Honor, I do not forfeit any of my rights.

*Id.* at 86. Later, while the court and counsel were discussing instructions and verdict forms out of the presence of the jury, Hotep-El addressed the court:

THE DEFENDANT: For the record, I want the record to reflect I have a right to be heard right 2.6. And I just want to make record of this is on the record, Joseph Hotep-El. Certified 90-70-13-170000, 1918, 4906, there was a written clarification of the tribunal on 1/25 I sent—I put it in the certified mail, which was continuously ignored. For the record, I do not consent to any further jail time, prison time, make a finding of detainment, et cetera. I want to put on the record, also that I filed in jury instructions, certified number 7013.17100000, 1918. It was for my respectfully requesting and demand a jury instructions of this tribunal going into jury trial. And also my in propria persona appearance in which it has been ignored for the record. And that by my documents that I've lawfully filed with this tribunal being denied, it has biased and prejudiced my due process. For the record, on the record, let the record reflect.

*****

Well, for the record, I want to let the record reflect I have continued to make aware of, you know, [Trial Court Commissioner] that I did not need or require, or that I was terminating the services of the Public Defender Agency, yet, the trial still proceeded over my objections and my continuance. You know, like I said, I put in—I put in the proper documentation assuming that I was in propria persona—you know, my in propria persona appearance. Not to be confused with pro se. So therefore, I mean, just make a record.

\*\*\*\*\*

—I would address the jurisdiction of the Court which has been assumed, but not been proven by the state [sic] of Indiana which April 3rd, 2017 documents was filed certified mail, also further was filed on 2/6/2017 certified mail. Not stamped by the court, affirming the jurisdiction, per Warnto (phonetic) and written nature of discovery, requesting that the state [sic]of Indiana provides Joseph Hotep-El with the oath of office, and delegation of authority, also bond and signatures of each public official operating within this tribunal. Yet, still, there has been no production from the State account and as well as it has assumed jurisdiction. The want for jurisdiction it still doesn't have jurisdiction, because it still has not been proven. For the record, on the record, and let the record reflect.

\*\*\*\*\*

I just want to make clear, the last time I was in here, for the record, on the record, and let the record reflect that [Trial Court Commissioner], that you was fired, as executor and appointed co-trustee for settlement closure in this tax matter. It still has not been—you know, so that's just for the record. And that's all I was here for, from the get go of the Clerk attachment.

*Id.* at 245, 246, 247-48.

[26] We observe that recently, the Texas Court of Appeals dealt with a similar case of obstreperous conduct. In *Lewis v. Texas*, 532 S.W.3d 423 (Crim. App. 2016), the defendant, who was being prosecuted for possession of cocaine, engaged in confrontational and obstructive behavior, raised the so-called defense of being a

"sovereign citizen," and made irrelevant references to the Uniform Commercial
Code. On appeal, the court held:

> The record in this case indicates that appellant is one of a loosely-
> formed group of citizens who believe that they are sovereign
> individuals, beyond the reach of any criminal court. These so-
> called "sovereign citizens" share a common vernacular and
> courtroom strategy. Courts across the country have encountered
> their particular brand of obstinacy—not consenting to trial,
> arguing over the proper format and meaning of their names,
> raising nonsensical challenges to subject matter jurisdiction,
> making irrelevant references to the Uniform Commercial Code,
> and referring to themselves as trustees or security interest holders.
> These calculated obstructions and delay tactics pose a unique
> challenge for trial courts considering *Faretta* motions. When a
> defendant asserts irrelevant or nonsensical arguments, it becomes
> difficult to discern whether he lacks a complete understanding of
> the proceedings or whether he is simply attempting to subvert
> them. *See United States v. Mosley*, 607 F.3d 555, 557-59 (8th Cir.
> 2010) (upholding a trial judge's decision to deny self-
> representation based on an observation that the defendant either
> did not understand the proceedings or was 'unwilling to
> participate in them'). The trial court's own assessment,
> therefore, is critical in determining whether the defendant
> actually lacks the mental capacity to conduct his own defense or
> whether he is utilizing his intact mental capacity to consciously
> obstruct the proceedings against him. We hold, that in either
> case, the trial court may deny the defendant's request to represent
> himself and insist on representation by appointed counsel.

*Id.* at 430-31 (internal footnotes omitted). The court further explained that
although it relies "heavily on the trial court's assessment of an obstreperous
defendant," the trial court's discretion to deny a defendant's right of self-
representation is limited. *Id.* at 431. First, allowing a defendant to represent

himself will, necessarily, result in delay. Nevertheless, as long as the delay is not a *calculated* obstruction, such delay cannot deprive a defendant of his right of self-representation once it has been properly asserted. *Id.* Second, the denial of self-representation cannot be based on *expected* obstructive behavior. *Id.*

[27] Once the court was informed that Hotep-El was found competent, it was clear that his filings, statements, and behavior that disrupted and delayed the proceedings were not disruptions related to an inability to understand the proceedings or to self-representation without a legal education; rather, they were deliberate and calculated tactics. Further, the trial court's decisions were based, not on conjecture, but on firsthand observation of Hotep-El's behavior each time he was present in court and with every filing. We thus conclude that given these facts it was not improper for the trial court to decline to reinstate Hotep-El's pro se status when his deliberate obstructive behavior did and further threatened to undermine the proceedings and compromise the court's ability to maintain order and efficiency of its courtroom and caseload.

[28] Moreover, a defendant asserting his right of self-representation must do so clearly and unequivocally. *Stroud v. State*, 809 N.E.2d 274 (Ind. 2004). Our Supreme Court has explained, "half-hearted expressions of dissatisfaction with counsel fail to meet the requisite clear and unequivocal assertion for the right of self-representation." *Dobbins v. State*, 721 N.E.2d 867, 872 (Ind. 1999). None of Hotep-El's statements represent a clear and unequivocal request to proceed without counsel; rather, they are complaints about counsel and declarations asserting his right to counsel. Further, he consistently accepted the assistance of

his court-appointed counsel, and when asked, point blank, if he wanted to proceed pro se, he stated, "I'm not the right representative." Tr. Vol. 2, p. 61.

[29] In addition, our Supreme Court has held that a request to proceed pro se on the morning of trial is per se untimely, and denial of such a request is permissible. *Moore v. State*, 557 N.E.2d 665 (Ind. 1990). Thus, even if Hotep-El had clearly and unequivocally asserted his right to self-representation the morning of trial, such request was per se untimely and its denial was proper.

[30] Finally, we note that Hotep-El argues the trial court improperly denied his request to represent himself because he was found competent to stand trial and was not found to be suffering from a severe mental illness. His argument is based on our Supreme Court's decision in *Edwards v. State*, in which the Court stated, "We understand [*Indiana v.*] *Edwards*[, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)] to announce the following rule of law: a trial court may deny a defendant's request to act pro se when the defendant is mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself." 902 N.E.2d 821, 824 (Ind. 2009).

[31] While we understand his argument, we conclude it is not reasonable in light of the overwhelming evidence in the record. As this opinion sets forth, the trial court did not deny Hotep-El the right to proceed pro se because it determined that he suffered from a mental illness so severe that he was not competent to conduct his own defense. Nonetheless, the trial court uses the term

"competency" at times to refer to Hotep-El's actual mental competence to stand trial as determined by Doctors Olive and Parker and mistakenly at other times to refer to his obstructionist conduct. When taken in context, the court's meaning is readily apparent, and its conclusion is clear: Hotep-El was legally competent and was intending to deliberately impede the proceedings. *See* Tr. Vol. 2, pp. 63-64. Although the trial court indicated at the April hearing that Hotep-El could again represent himself if he was found competent to stand trial, the court's decision on this issue changed given the behavior and tactics set forth in the record and discussed in this opinion. Dr. Parker's report further explains the sovereign citizen movement to which Hotep-El claimed affiliation, characterizing the movement's members as typically unwilling to cooperate with the proceedings and counsel and attempting to frustrate court proceedings.

[32] We conclude, therefore, that the trial court did not err when it terminated Hotep-El's self-representation in order to determine his competency to stand trial and subsequently when it did not reinstate his pro se status based on its conclusion that he sought to use the courtroom for deliberate disruption of the proceedings.

[33] Judgment affirmed.

Najam, J., and Brown, J., concur.