Marlon L. SCISNEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A05–9608–CR–348.

Court of Appeals of Indiana.

Dec. 30, 1997.

Michael C. Keating, Keating Bumb & Vowels, Evansville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Marlon L. Scisney appeals his convictions for possession of cocaine with intent to deliver ("count I"), a class A felony, and possession of marijuana ("count II"), a class A misdemeanor. He raises three issues for our review which we restate as:

(1) whether the expert testimony of Detective Mike Lauderdale invaded the province of the jury;

(2) whether the trial court's jury instruction on constructive possession was misleading and confusing; and

(3) whether Scisney received ineffective assistance of counsel.

We affirm.

The facts most favorable to the judgment follow. On June 1, 1993, Officers Dan Winters and Karen Montgomery observed a vehicle that matched the description of a getaway car used in an armed robbery earlier that morning. Officers Winters and Montgomery stopped and approached the vehicle. Officer Winters asked the driver for his driver's license and vehicle registration. The license identified the driver as Scisney. As Officer Winters spoke with Scisney, Officer Montgomery informed Officer Winters that there was a bag of beer in the front seat. Scisney's driver's license also indicated that he was under the age of twenty-one. Once the officers observed Scisney "in possession of alcohol, transporting alcohol and being under the age of twenty-one," they placed him under arrest. Record, p. 107–108.

The officers asked Scisney to exit his vehicle and enter their squad car. Officer Montgomery then contacted radio dispatch to check on the status of Scisney's driver's license and vehicle registration. Radio dispatch informed the officers that Scisney's license was suspended and the vehicle was not registered under Scisney's name. Scisney was then also placed under arrest for driving while his license was suspended.

Pursuant to standard operating procedure, the officers conducted an inventory search and had the vehicle towed. During the search, Officer Winters observed a plastic

bag in plain view. Upon further investigation, the plastic bag contained a white powdery substance. Officer Montgomery conducted a cocaine field test on a portion of the substance which tested positive. The officers also found a package of rolling paper in the car and on Scisney's person. Finally, Scisney produced a marijuana cigarette and pager at the time he was booked.

The State charged Scisney with possession of cocaine with intent to deliver, a class A felony, and possession of marijuana, a class A misdemeanor. Although Scisney stipulated that the white powdery substance was in fact 23.4612 grams of cocaine and that the substance in the rolled cigarette was marijuana, he denied knowing that the cocaine was in the vehicle. The jury found Scisney guilty as charged. The trial court sentenced him to twenty years for count I and sixty days suspended for count II. Scisney now appeals his conviction.

### I.

■ The first issue for our review is whether the opinion testimony of Detective Lauderdale invaded the province of the jury. Specifically, Scisney argues that Lauderdale should not have been "permitted to testify that the facts in [his] case suggested that [he] was a dealer rather than a user." Appellant's brief, p. 7. Scisney contends that the testimony violated Ind. Evid. Rule 704(b) which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid.R. 704(b).

■ Prior to the adoption of the Indiana Rules of Evidence in 1994, our supreme court held that a police officer could testify that a particular quantity of drugs was possessed for delivery rather than personal use. *Powers v. State*, 440 N.E.2d 1096, 1106 (Ind. 1982), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808 (1983). However, the supreme court also held that:

"[e]xpert opinion is not admissible on all issues. The question of a defendant's intent to commit a crime is not a proper subject for expert opinion, as this matter is a question of fact for the jury. Moreover, an expert is not permitted to give an opinion on the guilt or innocence of the defendant. Expert testimony is appropriate, however, when it concerns matters that are not within the common knowledge and experience of ordinary persons and it would aid the jury. Generally, the admissibility of expert testimony is a matter assigned to the discretion of the trial court; we review it on appeal only for abuse of discretion."

*Byrd v. State*, 593 N.E.2d 1183, 1185 (Ind. 1992) (citations omitted). Similarly, the decision on whether to allow hypothetical questions falls within the sound discretion of the trial court and we will reverse only where the trial court has abused its discretion. *Klagiss v. State*, 585 N.E.2d 674, 679 (Ind.Ct.App. 1992), *trans. denied, cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33. Abuse of discretion has been found where an expert is placed on the witness stand, presented with a hypothetical scenario nearly identical to the case at bar, and allowed to testify as to the intent, guilt, or innocence of the 'hypothetical' individual. *Ross v. State*, 516 N.E.2d 61, 63 (Ind.1987).

In *Ross*, the State presented an expert witness to testify about rapes. Although the trial court initially limited the scope of her testimony to explaining why a woman would wait two years before reporting a rape, the trial court later allowed the presentation of the State's entire case as a hypothetical question and allowed the expert witness to testify that the 'hypothetical' defendant was guilty of a "power rape." *Id.* at 63. The supreme court held that this was impermissible and concluded that:

"it is highly improper in any type of criminal case to place an expert on the witness stand and then ask that expert the very question which is the question for determination by the jury, that is the guilt or innocence of the defendant. The conduct in this case was an invasion of the province of the jury and was highly prejudicial to appellant."

*Id.* The Indiana Rules of Evidence are consistent with this case law. *See Weaver v.*

*State,* 643 N.E.2d 342, 345 (Ind.1994), *reh'g denied.*

Here, the State presented the specific facts of this case to Detective Lauderdale, a narcotics expert, and asked whether the facts, as presented, had any significance based upon his training and experience. Detective Lauderdale concluded that the individual would be a "suspect dealer." The record reads in relevant part:

"Q [State's counsel] Where we were at was the defendant was stopped in the area of Garvin and Madison Streets here in Evansville. Are you familiar with that area?

A Yes.

Q And it was 2:30 in the morning.

A Yes, Sir.

Q The defendant had the Cocaine in State Exhibit No. 6 weighing 23.4 grams either on his person, in vehicle somewhere. He had a Marijuana joint in his pocket. Understand?

A Yes, Sir.

\*   \*   \*   \*   \*   \*

Q The defendant had a pager by his side.

A Yes, Sir.

Q Do the combination of these facts have any significance to you based on your training and experience?

\*   \*   \*   \*   \*   \*

[State's counsel]: Your answer requires a yes or a no.

A Yes.

Q All right. What significance do you place upon these facts that I've related to you?

\*   \*   \*   \*   \*   \*

A Based on the elements that you advised me of that would lead me to believe that person to be a suspect dealer.

Q A dealer as opposed to user?

A Yes, sir."

Record, pp. 308–309, 317. Scisney claims that such a conclusion invades the province of the jury by offering an opinion as to Scisney's intent or state of mind. Furthermore, Scisney claims that Lauderdale's testimony improperly assumed that Scisney knew the cocaine was present in the vehicle.

Based on our review of relevant law, we conclude that a police officer or law enforcement official who is offered and qualified as an expert in the area of drugs, drug trade, drug trafficking, etc., may offer testimony as to whether particular facts tend to be more or less consistent with dealing in drugs. However, the expert may not make conclusions as to whether the defendant is a dealer or whether the defendant had the intent to deal or deliver. Similarly, the expert may not be presented with a hypothetical set of facts which reflect the facts of the case and be asked to conclude whether a hypothetical individual is more likely a dealer or user. In essence, the expert may comment on the facts of the case, but must refrain from making any conclusions as to the defendant's intent, guilt, or innocence. *See* Evid.R. 704(b).

Here, the State presented Detective Lauderdale with the facts of this case from which he concluded that an individual in such circumstances would be a "suspect dealer." Record, p. 317. As the State had referred to "the defendant" throughout its recitation of the facts to Detective Lauderdale, there is no doubt the jury could have assumed that he was referring to Scisney when he concluded "that person to be a suspect dealer." [1] Record, p. 317. Thereafter, the State isolated each of the relevant facts and solicited testimony concluding that each fact was indicative of a dealer not a user, thus reinforcing the conclusion that Scisney was a dealer. [2] Consequently, Detective Lauderdale offered conclusions as to Scisney's intent to deliver. This is impermissible, *Ross,* 516 N.E.2d at 63, and the testimony should have been excluded.

1. For this reason, we hereinafter assume that Detective Lauderdale referred to the defendant.

2. The fact that Detective Lauderdale testified to whether specific facts of the case were consistent with drug dealing is not problematic in itself. Rather, we find it disturbing that the conclusions followed immediately after he had concluded the person to be a "suspect dealer."

However, this does not end our analysis. We do not reverse because of the improper admission of evidence where it constitutes harmless error. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood that the challenged evidence contributed to the conviction. *Wickizer v. State*, 626 N.E.2d 795, 800 (Ind.1993). "An evidentiary error is harmless if the reviewing court determines that 'the probable impact [of the improperly admitted evidence] on the jury, in light of all the evidence in the case, is sufficiently minor so as to not affect the substantial rights of the parties.'" *Lambert v. State*, 675 N.E.2d 1060, 1065 (Ind.1996) (quoting *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995)), *cert. denied*, —— U.S. ——, 117 S.Ct. 2417, 138 L.Ed.2d 181, *reh'g denied*, —— U.S. ——, 118 S.Ct. 7, 138 L.Ed.2d 1040.

Although Detective Lauderdale concluded that the defendant would be a suspect dealer and this may have had some influence on the jury, it is not of sufficient influence to warrant reversal. First, the State introduced substantial independent evidence of guilt. The police discovered more than 23 grams of cocaine in the vehicle Scisney was driving. This alone is sufficient to support his conviction. "Evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver." *Beverly v. State*, 543 N.E.2d 1111, 1115 (Ind.1989). Furthermore, Scisney possessed rolling papers, marijuana and a pager. Second, the State properly presented testimony by Lauderdale that the weight and value of the cocaine were consistent with possession by a dealer. *Powers*, 440 N.E.2d at 1106. The State also properly presented Lauderdale's testimony on the use of pagers by dealers and their use of automobiles belonging to someone else. Therefore, there is not a substantial likelihood that Lauderdale's conclusion on whether the defendant would be a suspect dealer contributed more than slightly to the conviction. However, we stress that it is improper to solicit testimony from a witness as to whether the evidence suggests the defendant is more likely a dealer than user. It is improper to do so in any form whatsoever.

## II.

The second issue is whether the trial court erroneously instructed the jury on constructive possession. Specifically, Scisney argues that the instruction was conflicting and misleading. Our supreme court has held that where a jury instruction is claimed to be inadequate, the party challenging the instruction must tender an alternative, substitute written instruction in order to preserve the issue for appeal. *Whittle v. State*, 542 N.E.2d 981, 991 (Ind.1989); *Springer v. State*, 463 N.E.2d 243, 246 (Ind.1984). If the party fails to offer an alternative, substitute instruction, the issue is waived, even if an objection has been made in the record. *Whittle*, 542 N.E.2d at 991; *Springer*, 463 N.E.2d at 246.

Here, Scisney objected to the trial court's final instruction on constructive possession, but did not offer the requisite alternative, substitute written instruction to preserve the issue for appeal. Record, pp. 28, 396–397. As a result, the issue is waived. *See Whittle*, 542 N.E.2d at 991; *Springer*, 463 N.E.2d at 246.

## III.

The final issue for our review is whether Scisney received ineffective assistance of counsel. Scisney argues that in three instances his trial counsel failed to make a proper objection to testimony being offered by the State. To establish that the failure to object resulted in inadequate representation, the defendant must show that counsel's objection would have been sustained had it been made. *Myers v. State*, 617 N.E.2d 553, 556 (Ind.Ct.App.1993). We apply this same standard to those claims where the appellant seeks to establish that trial counsel's failure to object properly resulted in inadequate representation. We will address each challenge in turn.

## A.

First, Scisney argues that his trial counsel improperly objected to Officer Mont-

gomery's testimony regarding his reaction to the discovery of the bag containing cocaine. The record reads in relevant part:

"Q [State's counsel] And when Officer Winters came back what did you see in Officer Winters' possession?

A [Officer Montgomery] He had a baggie with a large amount of white substance in it.

Q Did the defendant show any concern or surprise that the Cocaine was

found in the vehicle?

[Scisney's counsel]: Objection. I believe that would go beyond her scope of personal knowledge of what the defendant's concern or surprise would be. I may be surprised and another person may be surprised and we may have two totally different reactions.

By The Court: Why don't your [sic] rephrase the question. I think it is the way that the question was asked that he is objecting to. If you will just rephrase the question, please.

Q. [State's counsel] Can you describe how the defendant reacted upon the Cocaine being seized from within the vehicle?

A I don't think he had any reaction. He didn't seem too surprised or anything. I don't know him personally and I don't know how he reacts but to me he didn't seem surprised."

Record, p. 223. Scisney claims that the State perceived his "lack of surprise over the discovery of the cocaine [as constituting] a tacit admission by him that he was aware of its presence." Appellant's brief, p. 22. Scisney further claims that tacit admissions are not admissible and, therefore, his trial counsel should have objected on that basis.

■ Our supreme court has held that "[s]ilence or an equivocal response to an assertion made by another, which would ordinarily be expected to be denied, is a tacit admission. The assertion and the words or conduct are admissible if the reaction is not a clear denial." *House v. State*, 535 N.E.2d 103, 109–110 (Ind.1989), *reh'g denied.* "Assert" is defined as "[t]o state as true; declare; maintain." Black's Law Dictionary

116 (6th ed.1990). Thus, an "assertion" may be considered a statement stated as if true.

Here, Officer Winters merely held the "baggie with a large amount of white substance in it" and handed it to Officer Montgomery to test. Record, p. 161–162, 223. He did not make a statement to Scisney regarding the cocaine nor did he observe Scisney after the cocaine was presented to Officer Montgomery. Rather, it was Officer Montgomery who observed Scisney's reaction to the discovery of cocaine in the car. Consequently, there is no assertion to which Scisney's reaction could be considered a tacit admission.

However, even if Scisney's reaction was a tacit admission, it would have been admissible because tacit admissions are admissible provided they do not constitute a "clear denial." *House*, 535 N.E.2d at 109–110. Scisney's reaction, or lack thereof, was not an unequivocal or clear denial. Therefore, it is unlikely the trial court would have sustained an objection to the admission of Scisney's reaction to the cocaine. Consequently, Scisney failed to establish that his trial counsel failed to provide ineffective assistance by not properly objecting to this testimony.

### B.

■ Second, Scisney contends that his trial counsel was ineffective for failing to renew a relevancy objection. The portion of the record at issue follows:

"Q [State's counsel] In the area of Madison and Garvin Streets is that an area in which you have noticed a concentration of Cocaine?

[Scisney's counsel]: Objection.

By The Court: Reason?

[Scisney's counsel] Relevancy.

By The Court: Overruled. Let me think about this. Rephrase. Sustained. Rephrase. Can you rephrase that?

[State's counsel]: I was thinking if I could and I will try.

By The Court: Okay.

Q [State's counsel] Are you familiar with the area of Garvin and Madison Streets in the city of Evansville?

A [Detective Lauderdale] Yes.

Q During the course of investigations in your narcotics work have you noticed that that is an area where there is a concentration of Cocaine dealing that takes place?

A Yes, Sir."

Record, pp. 297–298. Scisney argues that the evidence was simply "not relevant to the defendant's guilt" and, therefore, that his trial counsel should have renewed the objection. Appellant's brief, p. 28.

■■■■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. A trial court decision regarding the admission of evidence will be given a great deal of deference on appeal. *Tynes v. State,* 650 N.E.2d 685, 687 (Ind. 1995). In addition, a trial court has the discretion to determine the admissibility of evidence which is only marginally relevant. *Bates v. State,* 650 N.E.2d 754, 756 (Ind.Ct. App.1995). We will disturb the trial court's ruling on matters of relevancy only where there is abuse of discretion. *Forrest v. State,* 655 N.E.2d 584, 587 (Ind.Ct.App.1995), *trans. denied.*

Assuming Scisney's trial counsel had renewed the relevancy objection, it is probable the objection would have been overruled. The evidence of drug activity in the area in which Scisney was arrested may not be substantially relevant to the material elements of the offense. However, it is at least marginally relevant to the issue of whether he possessed cocaine with the intent to deal because the police found him with twenty three grams of cocaine in a neighborhood known for cocaine dealing. Therefore, Scisney has failed to overcome his burden of showing that a renewed relevancy objection would have been sustained. *See Burr,* 492 N.E.2d at 308. As a result, he failed to demonstrate that he received inadequate representation. *See Burr,* 492 N.E.2d at 308.

### C.

■■■■ Finally, Scisney contends that his trial counsel "either failed to state a reason for his objection, or stated the wrong reason"

when the State elicited testimony from Scisney regarding his father's cocaine addiction. Appellant's brief, p. 28. On cross examination, Scisney testified as follows:

"Q [State's counsel] State Exhibit No. 6. You've never seen that Cocaine before?

A [Scisney] No, I haven't.

Q You've never seen anything like that before?

A No, I haven't.

Q You've never been around people that have Cocaine?

[Scisney's counsel]: Objection. If I hear the question right he asked have you ever been around people who had Cocaine?

\*    \*    \*    \*    \*    \*

[Scisney's counsel]: My Objection is he's never seen that Cocaine before. His response is he had never seen that Cocaine before. Now we are trying to just basically get into who knows what and it could be possible violation of Rule 404b.

By The Court: Response?

[State's counsel]: We are now getting into specific instances of conduct. He has said he has never seen anything like that before. The last question was designed to probe further into his lack of being truthful in the last answer.

[Scisney's counsel]: Show my objection.

By The Court: Overruled.

[State's counsel]: The last question, Ms. Ruby, verbatim, please?

Reporter: 'You've never been around people that have Cocaine?'

A Yes, I have.

Q And that was in Kentucky?

[Scisney's counsel]: Objection.

By The Court: Overruled.

A That was in my home growing up in Kentucky. My father was an addict. That's as much as I've seen of it."

Record, pp. 351–353. Scisney argues that the evidence regarding whether he was around people that used cocaine and his father's cocaine addiction was simply "not rele-

vant to the defendant's guilt." Appellant's brief, p. 28.

We use the same standard for determining relevancy as before. Assuming Scisney's trial counsel had made a relevancy objection, Scisney has not proven the objection would have been sustained. While the evidence of his father's cocaine addiction by itself is not substantially relevant to the material elements of the offense, it could be offered as evidence of Scisney's knowledge of cocaine. At trial, the State presented the testimony for impeachment purposes. As the State explained to the trial court, "[Scisney] has said he has never seen anything like [the cocaine] before. The last question was designed to probe further into his lack of being truthful in the last answer." Record, p. 352. By demonstrating that Scisney had seen cocaine before, it could be less likely that Scisney did not know what was in the baggie or that the cocaine was in the car. Therefore, we conclude that Scisney has not proven that a relevancy objection would have been sustained in this instance. As a result, he failed to demonstrate that he received inadequate representation. *See Burr*, 492 N.E.2d at 308.

For the foregoing reasons, we affirm Scisney's convictions and sentences.

Affirmed.

RUCKER and FRIEDLANDER, JJ., concur.