# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 10:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

Janet L. Wheeler
Certified Legal Intern
Indiana University–Robert H.
McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Travon D. Blow,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 18, 2019<br><br>Court of Appeals Case No.<br>19A-CR-1183<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Alicia A. Gooden,<br>Judge<br><br>The Honorable Richard E.<br>Hagenmaier, Commissioner<br><br>Trial Court Cause No.<br>49G21-1711-F2-43236 |

**Najam, Judge.**

# Statement of the Case

Travon D. Blow appeals his convictions for dealing in a narcotic drug, as a Level 3 felony, and dealing in cocaine, as a Level 4 felony, following a jury trial. Blow raises three issues for our review, which we restate as follows:

1.  Whether the trial court erred when it denied Blow's request to proceed *pro se*, which request was accompanied by a request for counsel and, in any event, was made for the first time following the close of the evidence.

2.  Whether the trial court improperly relied on defunct principles of *res gestae* when the court admitted into evidence certain text messages seized from Blow's cell phone.

3.  Whether the trial court erred when it permitted a detective to testify that certain evidence was consistent with or indicative of dealing in narcotics or being a dealer in narcotics.

We affirm.

# Facts and Procedural History

On November 4, 2017, Indianapolis Metropolitan Police Department ("IMPD") Officer Christopher Cooper initiated a traffic stop of a vehicle being driven by Blow on the west side of Indianapolis. After Officer Cooper activated his emergency lights, Blow stopped his vehicle next to a gas pump at a nearby gas station and exited the vehicle. Officer Cooper observed Blow get out of his vehicle, drop a cell phone on the ground, and then reach his arm out of Officer

Cooper's immediate view but near the area of a trash bin. Officer Cooper ordered Blow to return to the vehicle, which he did, and Officer Cooper called for backup.

[4] After other IMPD officers arrived on the scene, Officer Cooper searched the trash bin near where he had observed Blow place his arm. There was trash inside the bin, but it was not "all the way full." Tr. Vol. II at 179. However, "on the top of everything that was in the" trash bin, Officer Cooper observed a clear plastic baggie with "several foil bindles" inside of it. *Id.* at 178. Officer Cooper looked more closely at the foil bindles and observed "white powder rock substances inside and also brown tannish substances," which he recognized from his training and experience to be crack cocaine and heroin packaged for distribution. *Id.* at 179. Officer Cooper then placed Blow under arrest and searched Blow's person, seizing $574 in cash, mostly in twenty dollar bills. A later analysis determined that the baggie in the trash bin contained at least 1.29 grams of cocaine and 5.57 grams of heroin.[1] Officers also seized the cell phone.

[5] The State charged Blow, in relevant part, with dealing in a narcotic drug, as a Level 3 felony, and dealing in cocaine, as a Level 4 felony. Officer Cooper testified at Blow's ensuing jury trial, as did a chemist for the Marion County Forensics Services Agency. The State also called Samuel LaCorte, a certified

---

[1] There was not enough of either substance to charge higher-level felonies, and so the laboratory did not conduct further tests.

cell phone data extractor, and during his testimony the State had admitted into evidence numerous records from the cell phone seized at the gas station. Those records included text messages between Blow and an individual identified as "Wiz" in which Blow stated, for example: "I got 7 hun for 10 . . . u think i can get some extras for my [b]i[r]thday?"; "Can u bring the 10 to the house when u come tonight. i got the 7 . . . "; "I gotta use the scale bruh. can i come thru"; "Left my scale at home. so when u get t[h]is way i need 2 use yours. let me kno bro"; "Around the corner. Comin up the alley"; "Get 8 of em ready for me real quick bro . . . ."; "I need 10 bro"; "Need 15"; "15 bro"; "Need 15"; "One is a stack fifty . . . the other is a G . . . ."; "20 . . . jus take a g . . . and ima slide down on u with the rest!" Ex. Vol. I at 69-70. Blow objected to the admission of the text messages between him and Wiz under Indiana Evidence Rule 404(b). Tr. Vol. II at 55-56, 217. The trial court overruled Blow's objection.

[6] The State also called IMPD Detective Ryan Vanoeveren as a witness. Detective Vanoeveren has fifteen years of experience in narcotics investigations and has been involved in "hundreds" of cases involving heroin and a "similar" number involving cocaine. *Id.* at 225. After some background, the State began to ask Detective Vanoeveren questions about the baggie Office Cooper discovered in the trash bin. At that point, Blow objected on the ground that any questions as to "whether or not this evidence in particular is consistent with dealing or possession with intent to deal" would require Detective Vanoeveren to impermissibly testify to a "final conclusion" that was "the job of the jury to figure out . . . ." *Id.* at 240-41. The court overruled Blow's objection.

[7]     Detective Vanoeveren then testified that the baggie appeared to contain "illegal narcotics" that had been "individually bagged up . . . for sale," which was in his training and experience "consistent with . . . dealing." *Id.* at 241. He testified that the street value of each foil bindle of heroin in the baggie was $20. He further testified that he had never personally encountered a user with "more than 10 bindles on them," let alone fifty-eight. *Id.* at 242-43. He testified that that much heroin was "consistent with" a "dealer." *Id.* at 243.

[8]     When then asked "what conclusion if any" he could make from the amount of the cocaine found in the baggie, Detective Vanoeveren testified, "[a]ll together it's dealing" and that it was "[a]ll consistent with dealing." *Id.* at 243. He added that the amount of cocaine in each foil bindle had a street value of $20. He again testified that he had never encountered a user "that has more than 10" such bindles, let alone the twenty-seven that were in the plastic baggie. *Id.* at 244. And he testified that the amount of cocaine in total was "indicative" of a "[d]ealer" and not a user. *Id.*

[9]     The State proceeded to ask Detective Vanoeveren about the "$574 in cash" found on Blow and whether "that amount of cash [was] indicative of using or dealing . . . ." *Id.* at 244-45. Blow objected and "re-state[d]" his "objection from previously." *Id.* at 245. The court overruled Blow's objection. Detective Vanoeveren testified that the number of twenty dollar bills in particular found on Blow was "consistent with somebody who's dealing." *Id.* at 246.

[10] The State then "move[d] on to some text messages" recovered from Blow's cell phone. *Id.* In reviewing those text messages, Detective Vanoeveren testified, without objection, that Wiz appeared to be a "supplier," that the text messages "indicate[d]" that the "relationship between Wiz and this target phone is a drug dealing relationship," and that the messages were "consistently ordering drugs." Tr. Vol. III at 3-5. Detective Vanoeveren further testified that the reference to scales in those messages was consistent with dealing, though it was "certainly possible" for a user to also have scales. *Id.* at 4. And Detective Vanoeveren concluded by agreeing that the text messages "overall . . . indicat[ed] drug conversation." *Id.* at 7.

[11] After the close of the State's case-in-chief and outside the presence of the jury, Blow's counsel informed the court that the defense intended to rest. *Id.* at 18. The following colloquy then occurred between the court, Blow, and the attorneys:

> THE COURT: Mr. Blow, did you have something you want to say?
>
> DEFENDANT: Yes. There is a strong conflict of interest, and I do not feel that proceeding to trial with this conflict of interest with my attorney here is . . . affording me a fair trial. I would like to go pro se.
>
> THE COURT: Well, you can't go pro se during the middle of the trial . . . . The State has rested. Are you going to testify or put on a defense? . . .

DEFENDANT:  There's a conflict of interest, Your Honor.

* * *

THE COURT:  What is the conflict of interest?

* * *

DEFENDANT:  We aren't seeing eye to eye. . . .  [T]here's confusion between us.

THE COURT:  You mean you just don't get along with them [your two attorneys], right?

DEFENDANT:  There's a conflict of interest. . . .

THE COURT:  Alright.  It seems to me that you [are] . . . just expressing displeasure with your attorneys, not that there's actually a conflict of interest. . . .  [S]o one more time, sir, are you going to testify or not? . . . We're not gonna hold up these proceedings much longer?

* * *

DEFENDANT:  I want to share something with the court[], please?

THE COURT:  Yes, Sir.

DEFENDANT:  Um, the oath of attorney, Rule 22, states that I do solemnly swear or affirm that I will support the Constitution

of the United . . . States and the Constitution of the State of Indiana. . . .

* * *

THE COURT:  What's your motion?

DEFENDANT:  My motion is to be afforded a fair trial and to go pro se.

THE COURT:  Okay.  I deny your right to [proceed] pro se. Bring the jury back in.

* * *

[DEFENSE COUNSEL]:  . . . [I]f I could request 10 minutes . . . .

THE COURT:  No, we're done.  We're not gonna take any more time on this.

[DEFENSE COUNSEL]:  . . . [A]s far as Mr. Blow testifying, I have advised him I believe it's not in his best interest.

THE COURT:  Okay.

[DEFENSE COUNSEL]:  . . . [W]e have talked about it and he has agreed that it is not in his best interest.

THE COURT:  Okay.

[DEFENSE COUNSEL]: So, I just wanted to put that on the record.

THE COURT: Alright. So, we are going to proceed. . . .

[THE PROSECUTOR]: Judge, I'm sorry. . . .

THE COURT: . . . [W]hat do you want to do?

[THE PROSECUTOR]: He's invoked his right to go pro se.

THE COURT: He's not going pro se. I denied that.

[THE PROSECUTOR]: Okay. But I think the court should have a hearing with him on that issue before moving along.

* * *

THE COURT: . . . [N]o matter what he tells me, he's not going to now go pro se during the middle of the trial. How far did you go in school, Mr. Blow?

DEFENDANT: What I mean by going pro se is to be afforded some time to continue the furtherance of my investigation of my own case.

THE COURT: No, no, no, we're not going to that. You want to represent yourself, is that what you're saying?

DEFENDANT: I want to afford an attorney that will represent me according to my likeness.

THE COURT: Okay. Alright. I think . . . the gist of this is that he's just not happy with his attorneys. He doesn't think they're doing what is in his best interest. He's just telling me he wants to go with another attorney. You're not getting a continuance. You're not competent to represent yourself at this point because of what's going on. So, we are gonna bring the jury out, and I'm gonna ask you if you rest or not. . . .

*Id.* at 19-23. The court then called the jury back in, and defense counsel rested. After closing statements, the jury found Blow guilty of dealing in a narcotic drug, as a Level 3 felony, and dealing in cocaine, as a Level 4 felony. The court entered its judgment of conviction and sentenced Blow accordingly, and this appeal ensued.

# Discussion and Decision

### *Issue One: Blow's Purported Request to Proceed Pro Se*

[12] On appeal, Blow first asserts that the trial court erred under the Sixth Amendment to the United States Constitution and under Article 1, Section 13 of the Indiana Constitution when it denied his purported request to proceed *pro se*. "A request to proceed *pro se* is a waiver of the right to counsel, and consequently, there are several requirements to invoking the right of self-representation successfully." *Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004). "A defendant's request must be clear and unequivocal, and it must be made within a reasonable time prior to the first day of trial." *Id.* (cleaned up); *see also Sherwood v. State*, 717 N.E.2d 131, 135 (Ind. 1999) (citing *Hunt v. State*, 459 N.E.2d 730, 733 (Ind. 1984)).

[13] A defendant's request is not "clear and unequivocal" where, in making the request, he "vacillate[s] between representing himself and being represented by counsel." *Stroud*, 809 N.E.2d at 280. And the "[f]ailure to make a timely request is deemed a waiver" of the right to proceed *pro se*. *Hunt*, 459 N.E.2d at 733. "[M]orning-of-trial requests are *per se* untimely." *Moore v. State*, 557 N.E.2d 665, 669 (Ind. 1990). The "denial of such a request is permissible." *Hotep-El v. State*, 113 N.E.3d 795, 809 (Ind. Ct. App. 2018), *trans. denied*.

[14] Blow's purported request to proceed *pro se* was not "clear and unequivocal" and also was not timely. *See Stroud*, 809 N.E.2d at 279. Following the close of the State's case-in-chief, Blow informed the trial court that he wanted to proceed "pro se." Tr. Vol. III at 19. The court's initial reaction was to deny the request as untimely, given that Blow first made the request not even as early as the morning of trial but only after all the evidence had already been presented. Nonetheless, the court inquired[2] with Blow about his purported request, and in his colloquy with the court Blow stated that he wanted "some time to continue the furtherance of my investigation of my own case" and that he "want[ed] to afford an attorney that will represent me according to my likeness." *Id.* at 23.

[15] The trial court had no obligation to grant Blow's end-of-trial request. Blow's request vacillated between going forward *pro se* and going forward with different counsel. As such, his request was not a clear and unequivocal invocation of the

---

[2] Although the court was understandably frustrated with Blow's maneuver, we reject Blow's assertion on appeal that "the court refused to evaluate the merits" of his request. Appellant's Br. at 10.

right to proceed *pro se*. *Stroud*, 809 N.E.2d at 280. Moreover, if a morning-of-trial request is *per se* untimely, Blow's request—which came after the close of evidence and, contrary to Blow's assertions on appeal, was accompanied by a request for a continuance to conduct further evidentiary investigation[3]—was as untimely as it gets. The trial was effectively over. The court acted within its discretion in denying Blow's request.

[16] We also briefly address Blow's freestanding argument under Article 1, Section 13 of the Indiana Constitution. According to Blow, that provision of the Indiana Constitution affords more robust protections for self-representation than does the Sixth Amendment. But the Indiana Supreme Court thinks otherwise. The Court has held that Article 1, Section 13 "track[s] federal standards" and "gives no broader rights than the Sixth Amendment" with respect to claims of self-representation. *Edwards v. State*, 902 N.E.2d 821, 828-29 (Ind. 2009).

[17] Blow asserts that *Edwards* is limited to mentally impaired defendants, but we agree with the State that Blow's reading is without merit. Under Blow's reading of *Edwards*, limiting Article 1, Section 13 to federal standards for the mentally impaired but granting broader rights to defendants not so impaired "give[s] lesser protection to more vulnerable people than it would for non-mentally-impaired defendants . . . ." Appellee's Br. at 16. We reject Blow's

---

[3] Blow erroneously asserts on appeal that his purported request to proceed *pro se* was simply to present his own closing argument. Appellant's Br. at 11.

assessment accordingly. There is no separate analysis for this Court to consider under the Indiana Constitution. *Edwards*, 902 N.E.2d at 828-29. We affirm the trial court's denial of Blow's equivocal and untimely request to proceed *pro se*.

### Issue Two: Admission of the Text Messages

We next consider Blow's argument that the trial court abused its discretion when it admitted into evidence, over Blow's objection, the text messages recovered from Blow's cell phone. We review the trial court's evidentiary rulings for an abuse of discretion. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* "In our review, we look to the totality of the circumstances and consider conflicting evidence in the light most favorable to the trial court's ruling." *Id.*

Blow objected to the admission of the text messages under Indiana Evidence Rule 404(b). That Rule states in relevant part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evidence Rule 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2) (emphasis added).

Blow asserts on appeal that the text messages were inadmissible under Rule 404(b)(2) because some of those messages "did not occur near the same time or

under the same circumstances as [the] charged offense[s] . . . .” Appellant's Br. at 17. Specifically, Blow argues that the State and trial court improperly relied on defunct principles from the doctrine of *res gestae* rather than on legal concepts embodied by our modern Evidence Rules. Blow asserts that “the trial court relied heavily” on *res gestae* authority; that the court admitted the evidence “based on its intrinsic nature” to the charged offenses; and that the State offered the text messages to “complete[] the story,” show “course of conduct,” and “give context” to Blow's arrest. *Id.* at 18 (quotation marks omitted).

[21]  As our Supreme Court has explained: “*Res gestae*—the common-law doctrine that made evidence admissible as part of a crime's story—did not survive the adoption of Indiana's Rules of Evidence in 1994.” *Snow*, 77 N.E.3d at 176. Arguments that evidence is admissible because, for example, it is “inextricably bound up,” “inextricably intertwined,” within the “circumstances and context,” or is “part and parcel” with other evidence “are not proper grounds for admissibility.” *Id.* at 177 (quotation marks omitted). Instead, the admissibility of evidence is to be determined under “the legal concepts and vocabulary of the Indiana Rules of Evidence.” *Id.* (quotation marks omitted).

[22]  Blow's attribution of *res gestae* principles to the State and trial court misstates the record. In the trial court, *defense counsel*, not the State, repeatedly argued, along the lines of *res gestae*, that the text messages were inadmissible because they did *not* go to “the story” of the charges. Tr. Vol. II at 59. In one hearing before the court, defense counsel argued that “case law[] makes it clear that . . . the . . . text messages . . . can come in if they are . . . intrinsic to the

crime charged." *Id.* at 58-59. In support of that statement, defense counsel cited *Bennett v. State*, a pre-*Snow*, 2014 opinion from our Court. 5 N.E.3d 498 (Ind. Ct. App. 2014). Defense counsel then attempted to distinguish *Bennett* and asserted that the text messages here were inadmissible because they were extrinsic to the charges and did not "complete[] the story" or tell "the rest of the story" of the alleged offenses. Tr. Vol. II at 59-60. At a subsequent hearing before the court, defense counsel repeated those arguments, stating that, for the text messages to be admissible, the State must show that they "complete the story." *Id.* at 145-47.

[23] The State responded to Blow's objection by asserting that the text messages were relevant to showing Blow's "intent to deal" and "intent to deliver" the cocaine and heroin. *Id.* at 56, 147. The trial court agreed, stating that the text messages were admissible under "the exception"—Rule 404(b)(2)—because they "go[] to show intent." *Id.* at 58. And while the State did respond to Blow's specific argument by additionally asserting that the evidence "complet[ed] the story," the context of the proceedings as a whole makes clear that the State's position to the trial court was that the evidence was admissible under Rule 404(b)(2) as evidence of Blow's intent to deal. *Id.* at 147. Further, in overruling Blow's objection to part of the messages, the court stated, "I read the *Bennett* case. . . . [T]he relevance is . . . he possess[es] . . . the intent." *Id.* at 148.

[24] Blow's reading of the record is incorrect, and the record does not support his argument on this issue. Accordingly, we are not persuaded by his argument

that the trial court erred when it admitted the text messages by relying on principles of *res gestae*. The State moved to admit the text messages as evidence of Blow's intent, consistent with Indiana Evidence Rule 404(b)(2). And the trial court quite specifically agreed. As Blow does not present an argument on appeal supported by cogent reasoning that the evidence was not relevant to his intent under that Rule, we affirm the trial court's admission of the text messages. *See* Ind. Appellate Rule 46(A)(8)(a).

### *Issue Three: Detective Vanoeveren's Testimony*

[25] We next address Blow's argument that the trial court erred when it permitted Detective Vanoeveren to testify to "ultimate conclusions of guilt." Appellant's Br. at 14. We initially note that Blow objected to only part of Detective Vanoeveren's testimony.[4] In particular, Blow objected to Detective Vanoeveren's testimony regarding the contents of the plastic baggie and the cash. Blow did not object to Detective Vanoeveren's testimony regarding the text messages. However, on appeal Blow conflates the different parts of Detective Vanoeveren's testimony under the same standard of review, which is incorrect. We will review Blow's properly preserved objections under our abuse of discretion standard, and we will review his unpreserved arguments under our fundamental error standard.

---

[4] Blow mistakenly asserts on appeal that his two objections were "continuing" objections. Appellant's Br. at 5. They were not. Tr. Vol. II at 240, 246.

<u>Whether the Trial Court Abused Its Discretion</u>

[26]  We first consider whether the trial court abused its discretion in the admission of those portions of Detective Vanoeveren's testimony to which Blow objected. Again, the trial court has broad discretion when ruling on the admissibility of evidence, and we will reverse the trial court's judgment only when its decision is clearly against the logic and effect of the facts and circumstances before the court. *Snow*, 77 N.E.3d at 176.

[27]  Detective Vanoeveren testified as a skilled witness. As the Indiana Supreme Court has explained:

> Although a witness may not be qualified to offer expert testimony under Indiana Evidence Rule 702, the witness may be qualified as a "skilled witness" (sometimes referred to as a "skilled lay observer"), *see Warren v. State*, 725 N.E.2d 828, 831 (Ind. 2000), under Indiana Evidence Rule 701. A skilled witness is a person with "a degree of knowledge short of that sufficient to be declared an expert under [Indiana Evidence] Rule 702, but somewhat beyond that possessed by the ordinary jurors." 13 Robert Lowell Miller, Jr., Indiana Evidence § 701.105, at 318 (2d ed. 1995). Under Indiana Evidence Rule 701, a skilled witness may provide an opinion or inference that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Evid. R. 701.

*Kubsch v. State*, 784 N.E.2d 905, 922 (Ind. 2003). "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal

conclusions." Evid. R. 704(b). However, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue." Evid. R. 704(a).

[28] In *Williams v. State*, on which Blow substantially relies, the Indiana Supreme Court held a detective's testimony that "'there's zero doubt in my mind that that was a transaction for cocaine' crossed the line into declaring [the defendant's] guilt." 43 N.E.3d 578, 582 (Ind. 2015). As the Court explained:

> In the context of this drug-dealing offense, [the detective's] testimony . . . does not just describe or imply some elements of the offense, but all of them—including mens rea. [The detective] could (and indeed did) imply guilt by explaining to the jury the process of controlled buys and utilizing confidential informants; his experience handling narcotics; and how narcotics are weighed and tested. He could also testify to the validity and authenticity of the audio and video recordings produced during both transactions. And he could testify to all of the particular actions of the [d]efendant: that on the first buy, he handed the CI money; the CI completed a hand-to-hand exchange with [the defendant]; and the CI returned to the vehicle with crack cocaine. All of these statements would have been admissible, even though they may quite strongly lead to an inference of dealing in cocaine. But [the detective] was not permitted to expressly state the ultimate legal conclusion that [the defendant] performed a "transaction for cocaine." At that point, his testimony no longer merely implied guilt, but declared it just as conclusively as if he had stated, "there's zero doubt in my mind that he is guilty of dealing cocaine"—a statement that would clearly violate Rule 704(b). Since his testimony that a "transaction for cocaine" occurred effectively resolved the ultimate issue of guilt as to the first buy, the trial court abused its discretion by admitting this statement

*Id.* at 582-83 (cleaned up).

[29] We agree with the State that *Williams* does not control here. Detective Vanoeveren's testimony with respect to the contents of the plastic baggie and the cash was never that "Blow is a dealer," that "Blow was dealing," or a like statement. Rather, Detective Vanoeveren's testimony was that, based on his training and experience, the amount of contraband found in the trash bin was "consistent with" and "indicative" of a "dealer," Tr. Vol. II at 243-44; that the manner in which the contraband was packaged was "consistent with dealing," *id.* at 241, 243; and that the amount of money found on Blow, especially the number of twenty dollar bills, was "consistent with somebody who's dealing," *id.* at 246. Without question, Detective Vanoeveren's testimony created a strong inference of guilt against Blow, but Detective Vanoeveren himself did not declare Blow guilty or otherwise cross the line into deciding the ultimate issue of Blow's guilt. He merely testified that the contraband and cash discovered at the gas station and on Blow's person was evidence consistent with dealing in narcotics.

[30] Nonetheless, Blow asserts that our Court has held that testimony that the evidence is "indicative of a dealer" impermissibly reaches an ultimate issue. Appellant's Br. at 15 (citing *Scisney v. State*, 690 N.E.2d 342, 346 (Ind. Ct. App. 1997), *summarily aff'd in relevant part*, 701 N.E.2d 847, 849 (Ind. 1998)). Blow misreads *Scisney*. In that case, the State couched the defendant's facts as a hypothetical and then asked the witness whether a "hypothetical" defendant on such facts "would be a 'suspect dealer.'" 690 N.E.2d at 345-46. After the

witness agreed, the State then proceeded to "isolate[] each of the relevant facts and solicit[] testimony concluding that each fact was indicative of a dealer[,] not a user, thus reinforcing the conclusion that [the defendant] was a dealer." *Id.* at 346.

[31] We held as follows:

> the expert may not make conclusions as to whether the defendant is a dealer or whether the defendant had the intent to deal or deliver. Similarly, the expert may not be presented with a hypothetical set of facts which reflect the facts of the case and be asked to conclude whether a hypothetical individual is more likely a dealer or user.

*Id.* However, we recognized that such witnesses "may offer testimony as to whether particular facts tend to be more or less consistent with dealing in drugs." *Id.* In other words, we acknowledged, explicitly contrary to Blow's argument, that a witness may testify to whether particular facts are consistent with dealing or with being a dealer, and Blow's assertion that we prohibited testimony regarding whether a fact is "indicative of a dealer" misreads *Scisney*. Accordingly, the trial court did not abuse its discretion when it permitted Detective Vanoeveren's testimony with respect to the contents of the plastic baggie and the cash, and we affirm the court's admission of that testimony.

### Whether the Trial Court Committed Fundamental Error

[32] Blow also asserts that the trial court erred when it permitted Detective Vanoeveren's testimony regarding the text messages. As Blow did not object to

this part of Detective Vanoeveren's testimony, to demonstrate reversible error on this issue Blow must show that fundamental error occurred. *C.S. v. State*, 131 N.E.3d 592, 595 (Ind. 2019) (quoting *Kelly v. State*, 122 N.E.3d 803, 805 (Ind. 2019)). "An error is fundamental . . . if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Id.* (quotation marks omitted). "Fundamental error is a daunting standard that applies only in egregious circumstances where the trial judge should have corrected the situation *sua sponte*." *Id.* at 596 (cleaned up).

[33]　Although Blow does not argue that fundamental error occurred and has therefore waived this issue for our review, his waiver notwithstanding, Detective Vanoeveren testified that Wiz appeared to be a "supplier," that the text messages "indicate[d]" that the "relationship between Wiz and this target phone is a drug dealing relationship," and that the messages were "consistently ordering drugs." Tr. Vol. III at 3-5. Detective Vanoeveren further testified that the reference to scales in those messages was consistent with dealing, though it was "certainly possible" for a user to also have scales. *Id.* at 4. And Detective Vanoeveren concluded by agreeing that the text messages "overall . . . indicat[ed] drug conversation." *Id.* at 7.

[34]　For the same reasons the trial court did not abuse its discretion when it permitted Detective Vanoeveren to testify about the plastic baggie and the cash, the trial court also did not err, let alone commit fundamental error, when it

permitted Detective Vanoeveren's testimony about the text messages. We affirm the trial court's nonintervention in that testimony.

# Conclusion

[35] In sum, we affirm Blow's convictions.

[36] Affirmed.

Vaidik, C.J., and Tavitas, J., concur.